******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ANTHONY VERRILLO *v.* ZONING BOARD
OF APPEALS OF THE TOWN
OF BRANFORD ET AL.
(AC 36196)

Gruendel, Mullins and Bear, Js.

*Argued November 19, 2014—officially released March 10, 2015*

(Appeal from Superior Court, judicial district of New
Haven, Blue, J.)

*Michael A. Zizka*, for the appellant (named defendant), with whom was *David A. Gibson*, for the appellants (defendant Linda F. Lantsberger et al.).

*Michael G. Tansley*, with whom was *Heather L. Dostaler*, for the appellee (plaintiff).

*Opinion*

GRUENDEL, J. In 2012, the defendant Zoning Board of Appeals (board) of the Town of Branford (town) granted eight variances sought by the applicants, defendants Linda F. Lantsberger, trustee, and David Laraia, trustee (applicants), to expand an existing nonconforming structure. The plaintiff, Anthony Verrillo, thereafter commenced an appeal of that decision in the Superior Court. The court sustained the appeal, concluding that the administrative record did not substantiate the board's finding of unusual hardship. This appeal concerns the propriety of that determination, and causes us to consider (1) whether the board rendered a formal, collective statement of reasons for its action, (2) the nature of the variance power, (3) whether a legally cognizable hardship exists, (4) whether such hardship peculiarly affects the applicants' property, (5) whether the applicants' proposal qualifies under the exception to the hardship requirement set forth in *Adolphson* v. *Zoning Board of Appeals*, 205 Conn. 703, 535 A.2d 799 (1988), and its progeny, and (6) whether the granting of the requested variances substantially affects the comprehensive zoning plan. We affirm the judgment of the Superior Court.[1]

This appeal concerns real property known as 112 Limewood Avenue (property). The property is located in a coastal area of town "comprised mostly of small cottage type homes on small parcels . . . ." Its title originates in a deed recorded in 1908. The lot is approximately sixty feet long and twenty-six feet wide, and its total area is 1605 square feet. In 1925, what the applicants describe as a "summer residence" was constructed on the property. That two-story structure contains four bedrooms and two bathrooms, with a living area of approximately 1000 square feet.

The town first enacted zoning regulations (regulations) in 1956. Branford Zoning Regs., § 6.1.C.3.[2] Under those regulations, the property is classified as part of the "Residence R-2 District." That district consists "of residential areas that have been developed over a period of years primarily with single-family houses for seasonal as well as year-round occupancy on relatively small lots." Branford Zoning Regs., § 3.2.B.1. Section 3.2.F.1 of the regulations requires a minimum lot area of 4000 square feet in that district, with which the property plainly does not comply. The existing structure likewise does not comply with the requirements of the R-2 district in several respects, as it significantly intrudes upon the front, rear, and side setback requirements of the property,[3] as well as certain maximum coverage restrictions[4] and the "[n]arrow [street]" setback requirement. See Branford Zoning Regs., §§ 3.2.F and 6.2.E (4).

It nevertheless is undisputed that the lot and existing structure antedate the enactment of the regulations in

1956. It further is undisputed that neither the lot nor the existing structure has changed in size or shape since that time. As such, they are legally existing nonconformities subject to the protections of General Statutes §§ 8-2, 8-13a, and 8-26a.[5] The continuance of those nonconformities, therefore, "is a vested right which adheres to the land itself." (Internal quotation marks omitted.) *Johnny Cake, Inc.* v. *Zoning Board of Appeals*, 180 Conn. 296, 300, 429 A.2d 883 (1980).

The applicants acquired the property in 1993. On February 23, 2012, they filed an application with the board requesting several variances from the regulations in order to expand the existing structure.[6] Specifically, the applicants sought to (1) reduce the front setback from 15 feet to 0.2 feet; (2) reduce the westerly side setback from 10 feet to 1.4 feet; (3) reduce the easterly side setback from 10 feet to 7.2 feet; (4) reduce the rear setback from 20 feet to 6.3 feet; (5) increase the maximum floor area ratio from 0.50 to 0.89; (6) increase the maximum coverage ratio from 0.25 to 0.52; and (7) obtain a waiver of the narrow street setback requirement contained in § 6.2.E (4) of the regulations. In addition, the applicants requested a variance to waive the prohibition against the expansion of nonconforming structures set forth in §§ 8.1.C.1 and 8.1.C.3 of the regulations.[7] With respect to the claim of hardship, the application noted that the property "is a preexisting legal nonconforming lot, upon which is located a legal preexisting nonconforming residence. The lot is substantially undersized (1605 sq. ft. in a zone requiring 4000 sq. ft.), leaving very little room for horizontal expansion and thereby requiring vertical expansion to improve the property by making it safer, more code compliant and provide reasonable and adequate living and storage space, parking and mechanical equipment."

The board held a public hearing on the application on March 20, 2012. At its outset, David A. Gibson, counsel for the applicants, provided an overview of their request, stating that the existing structure "is in dire need of renovation and upgrade." Gibson explained that under the applicants' proposal, although there would be some slight horizontal intrusions into the setback area, the principal expansion of the nonconforming structure would be vertical. In response to a question from the board, Gibson explained that the application did not propose demolishing the existing structure and building anew on a vacant lot. Instead, the applicants proposed expanding the existing nonconforming structure.

Accompanying their presentation was a plan prepared by architect Gerry Karpuska (plan) that detailed the proposed expansion of the existing structure from a two-story to three-story residence.[8] Karpuska provided a review of the plan, which contained both "existing" and "proposed" depictions of the expansion

from various angles, as well as contrasting floor plans. Gibson explained that the living area of the expanded structure would be 1430 square feet. The proposed floor area coverage would be 0.89, well beyond the 0.50 maximum permitted by the regulations. See Branford Zoning Regs., § 3.2.F.9.

After the applicants concluded their presentation, board Chairman Robert Harrington asked if anyone from the public wanted to be heard. Maureen McLean and Joanne Martinson, who owned an abutting parcel to the east of the property, spoke in favor of the application, stating that they "don't have a problem with any of . . . the changes [the applicants have] presented." The board also accepted a letter in support of the application from Fred Robinson and Grace Robinson, who owned an abutting parcel to the north of the property.

Attorney Patrick McGrath then spoke on behalf of the plaintiff, an abutting property owner, opining that "I don't think enough has been submitted concerning the hardship on this application [to] entitle the applicants to the variances that are requested." He reminded the board that "[t]he regulations clearly indicate that . . . the intent of the regulations is to permit nonconformities to continue until they're removed, but not to encourage their survival. It also says that nonconformities shall not be enlarged, expanded or extended, if such change increases the nonconformity. . . . Clearly, that's exactly what the applicants are looking for here." When board member Peter Berdon asked McGrath if he would agree that variances "are designed [to] allow people reasonable use of their property," McGrath stated that he did not agree. Instead, McGrath submitted that variances are designed to provide relief to applicants who can demonstrate "a hardship . . . owing to the characteristics of the land, that's unique to their property and not present in the general zoning district."

Berdon later clarified that the buildable area within the setback requirements on the property was approximately seven by twenty-two feet, and then asked whether those dimensions "in and of itself . . . establish that there is at least a hardship to build on this lot?" McGrath replied: "No, because there's a house on the lot. That's one important consideration at this point. There is a house on this lot. It's not as though this applicant can't build [and] is being denied [the] use of his property [and] is denied all reasonable benefit of this property. There's a house here. It's a residential district. There is a residence. It's [been] used as a summer residence, it has been for a very long period of time. There's nothing about this . . . lot, this structure and the application of the [regulations] to it, that denies them the reasonable benefit of their property. They have a house there. It's their notion that they want to build, they want to expand, they want to completely gut the place as the architect indicated, they want to

put a master bedroom on and another bathroom . . . they want to do all these things. It's the construction that creates the extensible hardship. . . . It's their desire to expand. It's their desire to extend. Their desire to have a better . . . living space than they have now . . . that causes them to bring this application, and it makes them try to find this as a hardship." If the requested variances were denied, McGrath argued, "the applicant still has a perfectly useful residence."

As a final matter, McGrath alternatively argued that the applicants "have not met their burden with respect to showing . . . there's . . . some unique difficulty about this property. . . . [T]he courts have consistently held that there is no hardship where an applicant's claimed hardship is no different than those generally affecting other properties in the same district. . . . [N]one of these lots are very large. All of those lots seem to be less than a tenth of an acre. . . . As you can see, there are lots all around the area [and] there's nothing terribly unique about this lot . . . ." McGrath concluded his remarks by stating that "the applicant . . . I don't believe has shown that there is a unique condition or an exceptional difficulty, a hardship owing to the size or configuration of this lot that warrants the granting of these variances. Any hardship that's purported here is solely self-created and self-imposed, and it's the construction here that necessitates these variances and nothing else."

In his rebuttal, Gibson emphasized that "this is a very small lot, it's a preexisting nonconforming lot with a preexisting nonconforming building on it. There is practically no room for improvement or expansion, other than vertically." He argued that the proposed expansion was reasonable and that "[w]hat we want to do is improve the property and expand it so we can get some living space." At that point, Berdon stated that "the status of the property, as it currently sits, is to some extent immaterial because [a property owner is] entitled to get variances to a reasonable extent. To use the property to a reasonable extent." Harrington responded, "I agree with that one hundred percent." Harrington then indicated that "[w]hat I'm hearing is, we have a structure that is old, it's falling apart . . . it's in need of major renovations . . . regardless of whether it gets expanded or not. But since we're going to go through all that, we might as well, rather [than] to maintain the status quo, we're going to ask for permission to improve it and enlarge it somewhat."

Harrington thereafter closed the public hearing and immediately entertained a motion to grant the requested variances. As the transcript of the March 20, 2012 meeting reflects:

"Harrington: Okay, I'm going to close the public hearing on this item? Peter? You're the most vocal person on this application. I think I'll let you make the

motion. . . .

"Berdon: I would move that we approve the requested variance.

"Harrington: Okay. What's the basis for the hardship? As [Gibson] outlined.

"Berdon: Yes, as [he] outlined, I think we have ample evidence in the record that the actual . . . buildable area on the lot is less than a single wide trailer. . . . I don't mean that in a derogatory sense; it's the fact, that even . . . a prefab mobile structure could not sit on this particular lot without having side line and other setback variances. The lot is skewed in shape, which causes the base or orientation of the structure to be somewhat of an angle to the street and to the rear line. I think, in the context of the existing structure on the property, that the . . . lack of space for mechanicals as well as the overall undersized lack of living space on that property demonstrates that what was constructed there in the past is not a reasonable use of the property, and I think what [has been] proposed is certainly within reason. I think that they're reasonable requests . . . . I think that the requests are in keeping with the character of the neighborhood, the requests do not extend to such an extent that it would be a larger grant of permission than what was otherwise granted to other houses in the neighborhood. . . . Have I left anything out? . . . And that will be the reasons for my motion?

"Harrington: I will second. Any discussion? Gentlemen?

"[Board member Anthony] Beccia: [inaudible] would be redundant.

"Harrington: I don't disagree with that. Okay? So, no one wants to make any comments or discuss it?

"Beccia: Other than it's a wordy description here, but if you look at the changes in the measurements . . . they're miniscule or [de minimis].

"Harrington: You can't grant a variance on [de minimis].

"Beccia: But it's not an aggressive application.

"Harrington: I agree, okay, fine.

"Berdon: And, just that goes on . . . in the context of counsel's representation that the . . . many of the side line and front line variances were requested to provide for tolerances in the context of lifting the house, I think that is a reasonable request. I think it would be unfair to the applicant to grant him the requests to, in essence, to do his project and yet, if there was a shift of the building, could put his project into jeopardy, talking literally inches in terms of those requests for tolerances. I think that, again, is reasonable and would be reasonable even if they were requesting that it actually expand to those areas.

"Harrington: Yes, because the contractor couldn't necessarily put it with that degree of tolerance.

"Berdon: Right?

"[Board member David] Laska: What we gain is a FEMA compliant building . . . at the end of the day we gain another few miles.

"Harrington: Okay?"

The board then unanimously voted to grant the eight requested variances without further comment thereon.

The minutes of the board's March 20, 2012 proceedings are part of the administrative record before us. They summarize the 112 Limewood Avenue application as follows: "Granted, 5/0 on the motion of Peter Berdon with a second by Bob Harrington, with Frank Kinney, David Laska and Bud Beccia in agreement that the hardship lay in the size and shape of the property where there was no room to expand horizontally and had to be vertical. The application was represented by [Gibson], with [McGrath] representing [the plaintiff] in opposition, contending that there was no hardship. Members felt that the planned renovations would allow the structure to remain in character with the neighborhood that is comprised mostly of small cottage type homes on small parcels, while the improvements to the structure would bring it up to date to meet today's needs with minimal enlargement to the interior of the house. By allowing mechanicals to be installed in the basement, which is currently [in] a crawl space, it would allow more living space for the upper stories. The slight changes requested for the footprint were explained as precautions in case the house shifted by an inch or so in lifting it off the pillar foundation. Mechanicals could be installed in the basement rather than in the living space, allowing more comfortable surroundings."

The plaintiff filed a timely appeal of that decision with the Superior Court.[9] In his April 17, 2012 complaint, he alleged, inter alia, that the board, in granting the requested variances, "acted illegally, arbitrarily, and in abuse of the discretion vested in it" because (1) "there was no showing of exceptional difficulty or unusual hardship by the applicants justifying said variances"; (2) the board "considered conditions affecting the district generally and not those especially affecting the property"; (3) "the variances granted were not in harmony with the general purpose and intent of the [regulations]"; (4) the board "failed to set forth proper and substantial reasons for its decision to grant said application"; and (5) the board "granted said application based upon factors not contained in the [regulations]."

After permitting the parties to submit written briefs, the court held a hearing on the matter on March 21, 2013. In its March 22, 2013 memorandum of decision, the court first found that the record did not contain a

formal collective statement of the basis of the board's decision. As a result, the court scrutinized the administrative record before ultimately concluding that "[a] careful search of the record fails to find a basis for the [board's] decision that is consistent with the law governing the granting of hardship variances." In particular, the court noted that the "small size of the property" was not unique to the area. The maps and other documentation in the record demonstrated that "[m]any properties in the neighborhood are as small as, or even smaller, than the property. . . . As a result of the property's size and shape, only a very small house can be built on it. Again, however, the record fails to establish that these attributes of the property are unusual in the neighborhood."

The court further relied on this court's decision in *Michler* v. *Planning & Zoning Board of Appeals*, 123 Conn. App. 182, 187, 1 A.3d 1116 (2010), for the proposition that "disappointment in the use of the subject property, namely, the inability to build a larger structure"; (emphasis omitted); did not constitute the requisite hardship under Connecticut law. Last, the court rejected the board's contention that the denial of the requested variances would be confiscatory, noting that the record contained evidence that the property's assessed value at the time of the public hearing was $221,000. For those reasons, the court sustained the plaintiff's appeal.

The defendants thereafter filed a petition for certification to appeal pursuant to General Statutes § 8-8 (o). This court granted the petition and this appeal followed.

I

At the outset, we address a threshold question regarding the proper scope of our review.[10] It is well settled that "[w]hen a zoning board states the reasons for its action, the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations. . . . The court should not go behind the official statement of the board."[11] (Citations omitted; internal quotation marks omitted.) *Chevron Oil Co.* v. *Zoning Board of Appeals*, 170 Conn. 146, 152–53, 365 A.2d 387 (1976). "In the *absence* of a statement of purpose by the zoning [agency] for its actions, it [is] the obligation of the trial court, and of this court upon review of the trial court's decision, to search the entire record to find a basis for the [agency's] decision." (Emphasis added; internal quotation marks omitted.) *Harris* v. *Zoning Commission*, 259 Conn. 402, 423, 788 A.2d 1239 (2002). Our inquiry begins, therefore, with the question of whether the board "rendered a formal, official, collective statement of reasons for its action." *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Plan-*

*ning & Zoning Commission*, 220 Conn. 527, 544, 600 A.2d 757 (1991).

That analysis is guided by certain established precepts. First, "individual reasons given by certain members of the [zoning agency do] not amount to a formal, collective, official statement of the [agency] . . . and are not available to show the reason[s] for, or the ground[s] of, the [zoning agency's] decision." (Citation omitted; internal quotation marks omitted.) *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, 228 Conn. 498, 514, 636 A.2d 1342 (1994); see also *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198, 208–209, 658 A.2d 559 (1995) ("although individual members of the board discussed reasons for granting the owners a variance, the board did not state a collective, official reason for its action"); *Beit Havurah* v. *Zoning Board of Appeals*, 177 Conn. 440, 455, 418 A.2d 82 (1979) (*Shea, J.*, dissenting) ("[t]he explanation of the various considerations which induced each of the three majority members of the board to vote as they did ought not to be treated as the equivalent of a formal statement of the reasons for the action of the board"). Second, the remarks of a board member in moving to grant a variance do not constitute a collective statement of the basis for the board's action. *Bloom* v. *Zoning Board of Appeals*, supra, 209–209 and 209 n.12. Third, it is not "appropriate for a reviewing court to attempt to glean such a formal, collective statement from the minutes of the discussion by . . . members *prior to the* [*zoning agency's*] *vote*." (Emphasis added.) *Protect Hamden/ North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission*, supra, 220 Conn. 546 n.15; accord *Welch* v. *Zoning Board of Appeals*, 158 Conn. 208, 214, 257 A.2d 795 (1969) ("individual views" of board members set forth in minutes of board's proceeding "are not available to show the reason for, or the ground of, the board's decision").

Fourth, our Supreme Court has explained that the "cases in which [it] held that the agency rendered a formal, official, collective statement involve circumstances wherein the agency *couples its communication of its ultimate decision with express reasons behind that decision.* See, e.g., *Caserta* v. *Zoning Board of Appeals*, 226 Conn. 80, 86, 91 n.9, 626 A.2d 744 (1993) (letter from board to plaintiff's attorney upholding revocation of plaintiff's zoning permit and listing reasons for decision constituted statement of basis for decision); *First Hartford Realty Corp.* v. *Plan & Zoning Commission*, 165 Conn. 533, 537, 338 A.2d 490 (1973) (assigned reasons accompanying decision to change zoning classification constituted statement of basis for decision); *DeMaria* v. *Planning & Zoning Commission*, [159 Conn. 534, 540, 271 A.2d 105 (1970)] (commission's records disclosing denial of plaintiff's application and two 'reasons for den[ial]' constituted statement of basis for decision) . . . ." (Citations omitted; emphasis

added.) *Harris* v. *Zoning Commission*, supra, 259 Conn. 420–21.

The record before us contains little discussion among board members on the merits of the applicants' variance requests after the public hearing concluded. Berdon, who made the motion to approve the eight variances, made brief remarks summarizing his view that the buildable area within the setbacks was minimal and that the applicants' proposal was a reasonable one. Beccia opined that the requested variances were de minimis in scope and that "it's not an aggressive application." Laska stated simply, "[w]hat we gain is a FEMA compliant building . . . at the end of the day we gain another few miles." The board then voted unanimously to approve the requested variances and provided no further comment thereon. The minutes of that March 20, 2012 proceeding state, with respect to the application at issue, that "[m]embers felt that the planned renovations would allow the structure to remain in character with the neighborhood that is comprised mostly of small cottage type homes on small parcels, while the improvements to the structure would bring it up to date to meet today's needs with minimal enlargement to the interior of the house. By allowing mechanicals to be installed in the basement, which is currently [in] a crawl space, it would allow more living space for the upper stories. The slight changes requested for the footprint were explained as precautions in case the house shifted by an inch or so in lifting it off the pillar foundation. Mechanicals could be installed in the basement rather than in the living space, allowing more comfortable surroundings."

We conclude that the foregoing does not constitute an official, collective statement of the basis for the board's decision. Although certain board members offered their perspectives on the application prior to voting thereon, the record does not contain a "communication of [the board's] ultimate decision with express reasons behind that decision." *Harris* v. *Zoning Commission*, supra, 259 Conn. 420–21. Conspicuously absent from both the transcript of the March 20, 2012 proceeding and the minutes thereof is any stated basis or rationale for the board's implicit finding that the hardship affecting this property was unusual, and not one generally affecting the district in which it is located. As a result, we are obligated to search the entire record to ascertain whether the evidence reveals any proper basis for the board's decision to grant the variances in the present case.[12] See id., 423.

## II

Before considering the specific claims advanced in this appeal, we first review the applicable law governing the granting of variances in this state. General Statutes § 8-6 empowers a municipal zoning board of appeals, inter alia, to "vary the application of the zoning bylaws,

ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured, provided that the zoning regulations may specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed. . . ."[13]

In reviewing a decision of a zoning board of appeals, "[i]t is well settled that courts are not to substitute their judgment for that of the board, and that the decisions of local boards will not be disturbed as long as honest judgment has been reasonably and fairly made after a full hearing . . . . Upon appeal, the [Superior Court] reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons. . . . We, in turn, review the action of the [Superior Court]. . . . In light of the existence of a statutory right of appeal from the decisions of local zoning authorities . . . a court cannot take the view in every case that the discretion exercised by the local zoning authority must not be disturbed, for if it did the right of appeal would be empty . . . . Where the board has made a decision to grant or deny a variance, we review the [Superior Court's] judgment reversing that decision to determine whether the court properly concluded that the board's decision was arbitrary, illegal or an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *Sydoriak* v. *Zoning Board of Appeals*, 90 Conn. App. 649, 658, 879 A.2d 494 (2005). The critical inquiry is whether the board's decision is supported by the evidence contained in the administrative record. "In reviewing a decision of a zoning board, a reviewing court is bound by the substantial evidence rule, according to which, [c]onclusions reached by [the board] must be upheld by the trial court if they are reasonably supported by the record." (Internal quotation marks omitted.) *Vine* v. *Zoning Board of Appeals*, 281 Conn. 553, 559–60, 916 A.2d 5 (2007).

As our Supreme Court has explained, a variance constitutes "authority extended to the owner to use his property in a manner forbidden by the zoning enactment." *Burlington* v. *Jencik*, 168 Conn. 506, 508, 362 A.2d 1338 (1975). "It is well established . . . that the granting of a variance must be reserved for unusual or exceptional circumstances. . . . An applicant for a variance must show that, because of some peculiar characteristic of his property, the strict application of the zoning regulation produces an unusual hardship, as opposed to the general impact which the regulation has

on other properties in the zone. . . . Accordingly, we have interpreted . . . § 8-6 to authorize a zoning board of appeals to grant a variance only when two basic requirements are satisfied: (1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. . . . Proof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Bloom* v. *Zoning Board of Appeals*, supra, 233 Conn. 206–208. The granting of a variance is no insignificant matter, as it runs with the land in perpetuity. See General Statutes § 8-6 (b).[14]

A zoning board of appeals acts as a "quasi-judicial" body; *Nielsen* v. *Zoning Board of Appeals*, 152 Conn. 120, 123, 203 A.2d 606 (1964); in deciding whether to grant "relief from the literal enforcement of a zoning ordinance . . . ." (Internal quotation marks omitted.) *L & G Associates, Inc.* v. *Zoning Board of Appeals*, 40 Conn. App. 784, 788, 673 A.2d 1146 (1996). Its "essential purpose" is to furnish "elasticity in the application of regulatory measures so that they do not operate in an arbitrary or confiscatory, and consequently unconstitutional, manner." *Florentine* v. *Darien*, 142 Conn. 415, 425, 115 A.2d 328 (1955); accord 4 P. Salkin, American Law of Zoning (5th Ed. 2008) § 39:7, p. 39-26 (zoning board of appeals "created to interpret, to perfect, and to insure the validity of zoning"). At the same time, a zoning board of appeals must adhere to the cardinal principle that the variance power should be carefully exercised in limited fashion.[15] See, e.g., *Reid* v. *Zoning Board of Appeals*, 235 Conn. 850, 857, 670 A.2d 1271 (1996) (power to grant variance should be sparingly exercised); *Pleasant View Farms Development, Inc.* v. *Zoning Board of Appeals*, 218 Conn. 265, 271, 588 A.2d 1372 (1991) (power to authorize variance only granted for relief in specific and exceptional instances); *Allen* v. *Zoning Board of Appeals*, 155 Conn. 506, 510, 235 A.2d 654 (1967) (variance power "should be used only where a situation falls fully within the specified requirements"); *Baccante* v. *Zoning Board of Appeals*, 153 Conn. 44, 47, 212 A.2d 411 (1965) (power to grant variance exercised "only to avoid an unnecessary hardship"). "[U]nless great caution is used and variances are granted only in proper cases, the whole fabric of town- and city-wide zoning will be worn through in spots and raveled at the edges until its purpose in protecting the property values and securing the orderly development of the community is completely thwarted." (Internal quotation marks omitted.) *Pleasant View Farms Development, Inc.* v. *Zoning Board of Appeals*, supra, 270–71.

"[Z]oning is concerned with the use of property and

not primarily with its ownership." (Internal quotation marks omitted.) *Builders Service Corp.* v. *Planning & Zoning Commission*, 208 Conn. 267, 285, 545 A.2d 530 (1988). "The object of zoning is to adopt measures to regulate property uses in conformance with a comprehensive plan in a manner to advance the public welfare. . . . This process embodies a clash between the common-law right of man to use his property as he pleases, so long as he does not create a nuisance, and the exercise of the police power to regulate that use in the interest of the public health, safety, morals and general welfare." (Citations omitted.) *Steiner, Inc.* v. *Town Plan & Zoning Commission*, 149 Conn. 74, 75–76, 175 A.2d 559 (1961). The variance power in a general sense "is the antithesis of zoning, and variance law is best understood as a reflection of the unresolved tension between attempting to maintain a comprehensive plan of uniformly regulated districts, and the need to provide relief from the general rules in individual circumstances." T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 124. For that reason, variances should be granted sparingly and narrowly tailored to alleviate the hardship complained of. See, e.g., *Kaeser* v. *Zoning Board of Appeals*, 218 Conn. 438, 445, 589 A.2d 1229 (1991) (variance power "should be sparingly exercised" and "only where a situation falls fully within the specified requirements" [internal quotation marks omitted]); *Heady* v. *Zoning Board of Appeals*, 139 Conn. 463, 467, 94 A.2d 789 (1953) ("[t]he power to grant a variance in the application of established zoning regulations should be exercised charily"); *L & G Associates, Inc.* v. *Zoning Board of Appeals*, supra, 40 Conn. App. 788 (variance must be strictly construed to limit relief to minimum variance sufficient to relieve hardship); see also 3 E. Yokley, Zoning Law and Practice (4th Ed. MacGregor 2010) § 20-13, p. 20-64 (variance granted "must be the minimum one sufficient to relieve the hardship complained of"); 101A C.J.S. 393, Zoning and Land Planning § 304 (2005) ("granting a variance" is "exceptional power [that] should be exercised sparingly").

Zoning boards of appeal possess a limited authority, as circumscribed by statute, the scope of which cannot be enlarged by either the board or the local zoning regulations. See *Carini* v. *Zoning Board of Appeals*, 164 Conn. 169, 173, 319 A.2d 390 (1972) ("[t]he board's power is restricted to that provided by the zoning ordinance in accordance with legislative or statutory enactments"), cert. denied, 414 U.S. 831, 94 S. Ct. 64, 38 L. Ed. 2d 66 (1973); *Langer* v. *Planning & Zoning Commission*, 163 Conn. 453, 458, 313 A.2d 44 (1972) (board's powers "stem directly from the statute"); *Bora* v. *Zoning Board of Appeals*, 161 Conn. 297, 302, 288 A.2d 89 (1971) (holding that board acted illegally by exceeding its power in granting variance); T. Tondro, supra, p. 124 ("variance power is not broad and generalized" and zoning board "must act in the narrowest manner

possible"); 101A C.J.S., supra, § 303, p. 391 ("[s]ince the zoning authorities derive their power to grant variances from the enabling legislation, the local legislature is without authority either to restrict or enlarge that power"); 2 P. Salkin, American Law of Zoning (5th Ed. 2011) § 13:27, p. 13-82.1 (zoning boards of appeal "are constrained by the limitations of the power granted to them by law"). At its essence, this case is about whether the board exceeded that authority.

The requirement that an applicant seeking a variance must establish the existence of a hardship peculiarly affecting its property "is a fundamental one in zoning law . . . ." *Ward* v. *Zoning Board of Appeals*, 153 Conn. 141, 143, 215 A.2d 104 (1965); see also *Hyatt* v. *Zoning Board of Appeals*, 163 Conn. 379, 382, 311 A.2d 77 (1972) (§ 8-6 "clearly directs the board to consider only conditions, difficulty or unusual hardship peculiar to the parcel of land which is the subject of the application for a variance"); *Plumb* v. *Board of Zoning Appeals*, 141 Conn. 595, 600, 108 A.2d 899 (1954) ("[t]he hardship must be one different in kind from that imposed upon properties in general by the ordinance"). An applicant's burden with respect to the hardship requirement, therefore, is twofold, as it must establish both the existence of a "sufficient hardship" and that "the claimed hardship is . . . unique . . . ." *Francini* v. *Zoning Board of Appeals*, 228 Conn. 785, 787, 639 A.2d 519 (1994). We consider each in turn.

### III

We begin with the question of whether the applicants at the public hearing demonstrated that "because of some unusual characteristic of [the] property, a literal enforcement of the zoning regulations would result in unusual hardship to [them]. . . . The hardship complained of must arise directly out of the application of the ordinance to circumstances or conditions beyond the control of the party involved." (Internal quotation marks omitted.) *Vine* v. *Zoning Board of Appeals*, supra, 281 Conn. 561, citing *Belknap* v. *Zoning Board of Appeals*, 155 Conn. 380, 383, 232 A.2d 922 (1967). The record reveals a multifaceted allegation of hardship, as several distinct bases were asserted at the public hearing. None provide a proper basis under our law for granting the requested variances to expand the nonconformity of the existing structure.

### A

First and foremost is the claim, set forth in the application submitted to the board and repeatedly articulated by Gibson at the public hearing, that the lot and the existing structure are legally existing nonconformities. The significance of that undisputed fact requires additional amplification.

As a general matter, "[z]oning regulations . . . seek the elimination of nonconforming uses, not their cre-

ation or enlargement. . . . [T]he accepted policy of zoning . . . is to prevent the extension of nonconforming uses . . . and that it is the indisputable goal of zoning to reduce nonconforming to conforming uses with all the speed justice will tolerate. . . . Nevertheless, the rule concerning the continuance of a nonconforming use protects the right of a user to continue the same use of the property as it existed before the date of the adoption of the zoning regulations." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Woodbury Donuts, LLC* v. *Zoning Board of Appeals*, 139 Conn. App. 748, 760–61, 57 A.3d 810 (2012). Indeed, "[i]t is a fundamental zoning precept in Connecticut . . . that zoning regulations cannot bar uses that existed when the regulations were adopted." (Internal quotation marks omitted.) *Taylor* v. *Zoning Board of Appeals*, 65 Conn. App. 687, 694, 783 A.2d 526 (2001). "Where [such] a nonconformity exists, it is a vested right which adheres to the land itself. . . . A vested right . . . to continue the nonconforming use is in the land . . . . [T]he right to a nonconforming use is a property right and . . . any provision of a statute or ordinance which takes away that right in an unreasonable manner, or in a manner not grounded on the public welfare, is invalid." (Citation omitted; internal quotation marks omitted.) *Petruzzi* v. *Zoning Board of Appeals*, 176 Conn. 479, 483–84, 408 A.2d 243 (1979).

Our General Statutes recognize and protect this bedrock principle. Section 8-2 precludes a municipality from amortizing or altogether eliminating such nonconformities through the enactment or amendment of its zoning regulations. Section 8-26a reaffirms that statutory imperative. Titled "Effect of change in subdivision or zoning regulations or boundaries of districts after approval of plan," it provides in relevant part that "[t]his subsection shall not alter or affect a nonconforming use or structure as provided in section 8-2." General Statutes (Rev. to 2011) § 8-13a (a) extends this statutory protection with particular respect to "buildings or other structures" in what has been characterized as "a statute of limitations for [certain] non-conforming buildings."[16] (Internal quotation marks omitted.) *Tine* v. *Zoning Board of Appeals*, 308 Conn. 300, 307, 63 A.3d 910 (2013).

The regulations in the present case likewise protect such legally existing nonconformities. Section 8.1.A.1 notes that "[w]ithin the districts established by these [r]egulations, there exist lots, structures and uses of land and structures that were lawful before these [r]egulations were passed or amended, but which would be prohibited, regulated, or restricted under the terms of these [r]egulations of future development." Consistent with the aim of land use regulation generally, § 8.1.A.2 provides that "[i]t is the intent of this [s]ection to permit these nonconformities to continue until they are removed, but not to encourage their survival." Section

8.1.B, titled "Nonconforming Uses and Structures," similarly provides that "[a]ny structure or use lawfully existing, or for which a lawful permit was issued under the provisions of the [z]oning [r]egulations previously in effect, may be continued. . . ." Section 8.1.G provides that "[n]o change of title, possession or right of possession shall, in itself, be deemed to affect the right to continue a nonconforming use, building or other structure."

The import of such protections is perhaps best illustrated in *Lampasona* v. *Planning & Zoning Commission*, 6 Conn. App. 237, 504 A.2d 554 (1986). That case involved North Stonington zoning regulations that "prohibited an owner of a mobile home from making more than one replacement." Id., 238. At the time that those regulations were enacted, the plaintiff had an existing mobile home on her lot. Id. She thereafter replaced that mobile home. Id. The plaintiff later "applied for permission to replace her mobile home for a second time with a mobile home of equal size," which was denied. Id. The plaintiff appealed that decision before the North Stonington Zoning Board of Appeals, which, following a public hearing, denied her appeal. Id.

The plaintiff then commenced a civil action challenging the constitutionality of the regulations at issue. Upon the stipulation of the parties, the Superior Court reserved the following question for this court's advice: "[W]hether Sections XI, I 3 e (2) (g) and (h) of the North Stonington Zoning Regulations are unconstitutional on their face and as applied to the plaintiff's property in that they constitute a taking of the plaintiff's property without due process in violation of the provisions of the Constitution of Connecticut and the Constitution of the United States." (Internal quotation marks omitted.) Id.

Before this court, the plaintiff argued that "by depriving her of the opportunity to replace her mobile home for a second time, the town is depriving her of a vested property right in a nonconforming use without just compensation." (Internal quotation marks omitted.) Id., 239. We agreed, stating that "the mobile home use to which [the plaintiff] has put her land is a valid nonconforming use. Since her nonconforming use has been validly established, she has a vested right under the protection of our federal and state constitutions to continue that use." Id. We further reasoned that the plaintiff's "nonconforming use of the property will not change with the second replacement of her mobile home. . . . The use will remain unchanged in manner and scope. The replacement, therefore, is constitutionally protected."[17] (Emphasis omitted; footnote omitted.) Id. We thus held that because the regulations "in issue seek . . . the termination of a valid nonconforming use after a 'grace period' of one mobile home replacement," those regulations were unconstitutional. Id., 240.

*Lampasona*, then, is a quintessential example of the precept that "[a] lawfully established nonconforming use is a vested right and is entitled to constitutional protection." (Internal quotation marks omitted.) *Petruzzi* v. *Zoning Board of Appeals*, supra, 176 Conn. 484. That precept comports with the protections afforded by our General Statutes.

It therefore is not insignificant that the property in the present case contains legally existing nonconformities with respect to the lot and the existing structure. To the contrary, the presence of that vested right is crucial to our consideration of whether the requested variances properly were granted. The existence of such nonconformities, however, does not, a fortiori, entitle a property owner to a variance to expand those nonconformities. The defendants have provided us with no authority so indicating. Such a proposition stands in stark contrast to the fundamental principle in Connecticut that "nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit—[i]n no case should they be allowed to *increase*." (Emphasis added; internal quotation marks omitted.) *Adolphson* v. *Zoning Board of Appeals*, supra, 205 Conn. 710; see also *Guilford* v. *Landon*, 146 Conn. 178, 182, 148 A.2d 551 (1959) ("the accepted policy of zoning . . . is to prevent the extension of non-conforming uses"). As our Supreme Court has recognized, "[t]he advantages which the owners of nonconforming property acquire by the enactment of a zoning ordinance are not to be subsequently augmented except as permitted by the ordinance." *Kleinsmith* v. *Planning & Zoning Commission*, 157 Conn. 303, 314, 254 A.2d 486 (1968); see also *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 243, 662 A.2d 1179 (1995) ("a nonconforming structure cannot be increased in size in violation of zoning ordinances"); *Neumann* v. *Zoning Board of Appeals*, 14 Conn. App. 55, 59, 539 A.2d 614 ("[t]he plaintiff has not presented us with any authority, nor are we aware of any, that gives him a vested right to use a nonconforming lot by enlarging a building thereon without regard to restrictions placed on such use by applicable zoning regulations"), cert. denied, 208 Conn. 806, 545 A.2d 1103 (1988); 101A C.J.S., supra, § 188, p. 269 ("the area of a nonconforming use may not be enlarged or extended, except as permitted by applicable zoning statutes or ordinances" [footnote omitted]). Put simply, the existence of a legally existing nonconformity cannot, in itself, justify the granting of variances to expand that nonconformity.

B

It bears repeating exactly what this case is—and is not—about. This is not a case involving a proposal seeking to construct a residence on a vacant nonconforming lot in a residential district.[18] Contra *Archam-*

*bault* v. *Wadlow*, 25 Conn. App. 375, 382–83, 594 A.2d 1015 (1991) (variance properly granted to build residence on nonconforming lot when record revealed that "there are no alternative uses" for property other than "the construction of a single-family home"). This also is not a case involving a proposal to do "nothing more than to alter the interior of an existing nonconforming building for a permitted use" in a particular zoning district. *Petruzzi* v. *Zoning Board of Appeals*, supra, 176 Conn. 484. Rather, this case involves the proposed expansion of an existing nonconforming residential structure in a residential district.

As we have noted, a variance "constitutes permission to act in a manner that is otherwise prohibited under the zoning law of [a] town." *Bloom* v. *Zoning Board of Appeals*, supra, 233 Conn. 206. The regulations in this case proscribe the expansion of nonconforming structures in town.[19] Section 8.1.A.3 specifically provides that "[i]t is . . . . the intent of this Section [8.1, titled 'Nonconformities'] that nonconformities shall not be enlarged, expanded or extended if such a change increases the nonconformity, nor shall they be used as grounds for adding other structures or uses prohibited elsewhere in the same district." Section 8.1.C.1 similarly provides that "[n]o nonconforming use of land shall be enlarged, extended or altered, and no structure or part thereof devoted to a nonconforming use shall be enlarged, extended, reconstructed or structurally altered, except where the result of such changes is to reduce or eliminate the nonconformity." Section 8.1.C.2 specifies in relevant part that "[n]o nonconforming use of a structure shall be extended to occupy land outside such structure . . . ." Section 8.1.C.3 provides that "[n]o building or other structure that does not conform to the requirements of these regulations regarding the building height limit, area and width of lot, percentage of lot coverage, and required yards and parking facilities shall be enlarged unless such enlarged portion conforms to the regulations applying to the district in which it is located." The applicants requested, and the board granted, a variance waiving the requirements of §§ 8.1.C.1 and 8.1.C.3 of the regulations.[20] The issue, then, is whether the applicants at the public hearing demonstrated a hardship resulting from their inability under the regulations to expand their existing nonconforming structure.

C

At the public hearing, the applicants indicated that the principal impetus for their variance requests was twofold. They desired more living and storage space, and they wanted to modernize the existing structure.

The case law is replete with instances in which an applicant predicated its claim of hardship on a desire to expand an existing nonconforming structure for what our appellate courts have characterized as personal

considerations, such as the desire to obtain more space or to modernize an antiquated building. It long has been held that "disappointment in the use of property can hardly constitute practical difficulty or unnecessary hardship within the meaning of a zoning law or regulation." *Berkman* v. *Board of Appeals on Zoning*, 135 Conn. 393, 399–400, 64 A.2d 875 (1949). In *Garibaldi* v. *Zoning Board of Appeals*, 163 Conn. 235, 238, 303 A.2d 743 (1972), our Supreme Court held that "a variance is properly granted only where there is a showing before the zoning board of appeals that the hardship caused by the application of zoning regulations relates to the property for which the variance is sought and not to the personal hardship of the owners thereof." The court further explained that "a variance is not a personal exemption from the enforcement of zoning regulations. It is a legal status granted to a certain parcel of realty without regard to ownership. It is for this reason that the rule is well established that the financial loss or the potential of financial advantage to the applicant is not the proper basis for a variance. . . . Similarly, it is also well established that self-inflicted hardship which arises because of individual actions by the applicant will not provide a zoning board of appeals with sufficient reason to grant a variance. . . . Hardships in such instances as these do not arise from the application of zoning regulations, per se, but from zoning requirements coupled with an individual's personal needs, preferences and circumstances. Personal hardships, regardless of how compelling or how far beyond the control of the individual applicant, do not provide sufficient grounds for the granting of a variance." (Citations omitted.) Id., 239–40. For that reason, "[t]he situation of any particular owner is irrelevant" to the determination of whether a hardship exists. *Hyatt* v. *Zoning Board of Appeals*, supra, 163 Conn. 382.

Accordingly, "[t]he basic zoning principle that zoning regulations must directly affect land, not the owners of land . . . limits the ability of zoning boards to act for personal rather than principled reasons, particularly in the context of variances." (Citation omitted; internal quotation marks omitted.) *Reid* v. *Zoning Board of Appeals*, supra, 235 Conn. 857–58. As this court has recognized, an applicant's "disappointment in the use of the subject property, namely, *the inability to build a larger structure*," is personal in nature and not a proper basis for a finding of hardship. (Emphasis altered.) *Michler* v. *Planning & Zoning Board of Appeals*, supra, 123 Conn. App. 187.[21] Our Supreme Court similarly has recognized that "the fact that an owner is prohibited from adding new structures to the property does not constitute a legally cognizable hardship." *Bloom* v. *Zoning Board of Appeals*, supra, 233 Conn. 210–11 n.13. Nor does an applicant's desire "to modernize" an existing nonconformity "constitute a cognizable legal hardship that would warrant a vari-

ance." *Horace* v. *Zoning Board of Appeals*, 85 Conn. App. 162, 171, 855 A.2d 1044 (2004). Improving the utility or the appearance of a building, "even if beneficial, [does not] constitute a cognizable legal hardship . . . ."[22] Id. As our Supreme Court observed in rejecting a claim of "unusual hardship from the fact that the internal layout of the [existing nonconforming structure] was poorly designed to meet the needs of modern living," that "inconvenience . . . does not rise to the level of hardship necessary for the approval of a variance."[23] *Moon* v. *Zoning Board of Appeals*, 291 Conn. 16, 26 n.9, 966 A.2d 722 (2009).

At the public hearing, Gibson explained that the applicants were seeking to obtain "more space" inside the existing nonconforming structure. He noted that the existing structure was "an old building" that was "in dire need of renovation and upgrade. . . . The basic problem is, there's practically no room to expand at ground level." In addition to providing a new space to locate the furnace, which currently was located in the crawl space, the applicants sought to obtain more "living and storage space" on the proposed third story of the structure. Gibson stated that "[w]hat [the applicants] want to do is improve the property and expand it so we can get some living space" and emphasized that "since there is little or no room . . . for horizontal expansion [under the regulations], what has to be done in order to improve the property and modernize it . . . is to go up."

Karpuska, the architect who prepared the plans submitted to the board depicting the proposed expansion, testified that "[t]he washer and dryer is [currently] in the dining room" and that "a water heater [is located] in this back room on the first floor." To ameliorate the effects of an internal layout that was poorly designed to meet the needs of modern living; *Moon* v. *Zoning Board of Appeals*, supra, 291 Conn. 26 n.9; Karpuska explained that "pretty much the place will be gutted to make a better living standard." Likewise, in summarizing the board's action, the minutes of the March 20, 2012 meeting state in relevant part that granting the requested variances "would allow more living space for the upper stories," would allow "more comfortable surroundings" by creating additional room for mechanicals, and that "the improvements to the structure would bring it up to date to meet today's needs . . . ." It nevertheless remains that neither the applicants' personal desire to expand their existing nonconforming structure to obtain additional, more comfortable space nor their desire to modernize that structure constitute legal hardship under our law. Accordingly, those rationales do not furnish the requisite basis for a finding of hardship by the board.

## D

We turn next to the argument that the scope of the

variances sought is minimal. At the public hearing, Gibson described the requested setback variances as "very slight" and submitted that "[t]he plan really is not to change anything . . . ."[24] During the board's deliberations, Beccia opined that the requested variances were "miniscule or [de minimis]."

As Harrington noted during the board's deliberations, the fact that a particular variance request appears de minimis in scope is not a valid basis for granting a variance. Neither the applicants nor the board argue otherwise in this appeal. This court expressly has declined "to recognize a 'de minimis' deviation exception that would obviate the need for [applicants] to prove hardship." *Morikawa* v. *Zoning Board of Appeals*, 126 Conn. App. 400, 413, 11 A.3d 735 (2011); see also R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 9.3, p. 256 ("Connecticut does not recognize an exception to the hardship rule allowing de minimus variances").

On a more basic level, the administrative record before us does not substantiate a finding that the requested variances were de minimis in scope. The applicants' proposal entails adding a third story to the existing two-story structure. As this court noted in *Munroe* v. *Zoning Board of Appeals*, 75 Conn. App. 796, 810–11, 818 A.2d 72 (2003), a case involving vertical expansion of a nonconforming structure in the same municipality as the present case: "The addition of a . . . story is not a negligible or cosmetic change from the original nature of the nonconformity. The bulk of the building has been increased in quantity and dimension, thereby intensifying the nonconformity. The [additional] story provides a significant additional amount of enclosed space within the confines of the nonconforming footprint, causing a substantial increase in the nonconformity." In addition, the applicants sought to increase the maximum floor area ratio from 0.72 to 0.89—well beyond the .50 maximum set forth in § 3.2.F.9 of the regulations. The applicants also requested absolute waivers from the requirements of § 6.2.E (4) regarding the narrow street setback requirements and §§ 8.1.C.1 and 8.1.C.3, which prohibit the expansion of the nonconformity of an existing nonconforming structure. In short, the record belies any claim that the applicants' request was minimal in nature.

E

The administrative record likewise does not substantiate a finding that the hardship arose from an inability to comply with any fire or building codes. In their application, the applicants alleged, inter alia, that the requested variances would make the existing structure "more code compliant," and would "contribute to the health and safety of the [applicants] by providing compliance with building and fire code requirements."[25] Although the transcript of the public hearing contains

a few isolated and vague references to such requirements by the applicants' counsel,[26] the record lacks any evidence regarding such requirements.[27] As was the case in *Moon* v. *Zoning Board of Appeals*, supra, 291 Conn. 26, the applicants here "submitted no evidence, lay or expert, that they need a variance to correct any code violation . . . ." The applicants also did not submit any evidence indicating that the proposed expansion of the existing structure was a necessary, rather than preferable, course to achieve compliance with any fire or building code requirements, nor did they identify a single regulation or code provision with which they presently were in noncompliance. Rather, they merely suggested that such expansion also would serve to help "bring it up to code."

Moreover, as McGrath argued at the public hearing, "[t]here are zoning laws which require and building codes which this applicant is required to comply with. If there is some condition about mechanicals or anything else on the property that's not in compliance, they need to bring it into compliance, and a lack of compliance with other laws is not a basis for a hardship in this case." Given the paucity of evidence regarding this issue, we need not further consider McGrath's contention that such noncompliance with fire or building code requirements cannot constitute a valid basis for a finding of legal hardship. Understandably, neither the applicants nor the board have raised such a claim in this appeal.[28]

F

It is undisputed that a three foot wide easement runs along the easterly property line.[29] At the public hearing, Gibson made two references to that easement, stating that "you can see there is a right-of-way that takes up three feet on the eastern side of the property and is shared with the property to the east," and that he thought "the fact that [the property is] encumbered by a right-of-way to the east makes it somewhat unique." No further mention of that easement occurred in either the public hearing or the board's subsequent deliberations.

We fail to see how the existence of that easement gives rise to any claim of hardship. The easement originates at the easterly property line and is three feet in width—well within the ten foot side setback specified by § 3.2.F.6 of the regulations. As such, the easement does not constrict the buildable area on the property. Beyond acknowledging its existence, the defendants have provided no analysis or legal authority regarding the import of the easement with respect to their claim of hardship. Under the facts of this case, we conclude that the existence of that easement largely is immaterial to their request for variances to expand the existing nonconforming structure.

## G

The defendants also contend that the application of the regulations in the present case had a confiscatory effect on the property.[30] That contention sits at the intersection of two related, yet distinct, areas of law: land use regulation and constitutional takings jurisprudence. This is not a case where the applicants are alleging a taking of property without just compensation in violation of the fifth amendment to the federal constitution and article first, § 11, of the Connecticut constitution. See *Rural Water Co.* v. *Zoning Board of Appeals*, 287 Conn. 282, 284–85, 947 A.2d 944 (2008). Rather, they submit that the board could have found that the literal enforcement of regulations at issue operated in a confiscatory manner with respect to their property, thereby justifying the exercise of the variance power.

Under Connecticut law, two distinct tests apply to such claims in the variance context. The first is the "practical confiscation" test. As the Supreme Court explained more than one-half century ago, a zoning board of appeals "stands between the public and the individual property owner to protect the latter from unnecessary hardship—hardship, that is, which, owing to some condition affecting his land peculiarly, he would suffer when it is not necessary for him to do so in order to effectuate the general plan of zoning adopted for the community as a whole." *Goldreyer* v. *Board of Zoning Appeals*, 144 Conn. 641, 645, 136 A.2d 789 (1957). "A classification permanently restricting the enjoyment of property to such an extent that it cannot be used for any reasonable purpose goes beyond valid regulation and constitutes a taking without due process"; id.; and "amounts to 'practical confiscation.' " *Chevron Oil Co.* v. *Zoning Board of Appeals*, supra, 170 Conn. 151.

"A practical confiscation occurs when a landowner is prevented from making *any* beneficial use of its land—as if the government had, in fact, confiscated it." (Emphasis added.) *Bauer* v. *Waste Management of Connecticut, Inc.*, supra, 234 Conn. 256. "[A] practical confiscation requires a *complete* loss of any beneficial use . . . ." (Emphasis in original; internal quotation marks omitted.) *Green Falls Associates, LLC* v. *Zoning Board of Appeals*, 138 Conn. App. 481, 495 n.9, 53 A.3d 273 (2012). Our Supreme Court "repeatedly [has] held that considerations of financial disadvantage—or, rather, the denial of a financial advantage—do not constitute hardship, unless the zoning restriction greatly decreases or practically destroys [the property's] value for any of the uses to which it could reasonably be put . . . ." (Internal quotation marks omitted.) *Rural Water Co.* v. *Zoning Board of Appeals*, supra, 287 Conn. 295. Thus, to prevail under a claim of practical confiscation, a party must demonstrate that a literal application of the regulations at issue "will not allow *any* reasonable

use of its property." (Emphasis added.) *A & F Construction Co.* v. *Zoning Board of Appeals*, 60 Conn. App. 273, 280, 759 A.2d 101 (2000).

Practical confiscation has been found where "there are no alternative uses" for a vacant nonconforming property in a residential zone other than "the construction of a single-family home." *Archambault* v. *Wadlow*, supra, 25 Conn. App. 383; accord *Lessner* v. *Zoning Board of Appeals*, 151 Conn. 165, 168–70, 195 A.2d 437 (1963) (variance properly granted to permit construction of one-story house on vacant nonconforming lot in residential zone because property "cannot be used for any permitted purpose without a variance" and "the application of the regulations to [the] property practically destroys its value"). It also has been found where "the application of [the] regulations [at issue] prohibited *any* reasonable use of the subject lot" in a residential zone, where the applicant sought a variance to construct an accessory building on a vacant nonconforming lot. (Emphasis added.) *Stankiewicz* v. *Zoning Board of Appeals*, 15 Conn. App. 729, 735, 546 A.2d 919 (1988), aff'd, 211 Conn. 76, 556 A.2d 1024 (1989), overruled in part on other grounds by *Gibbons* v. *Historic District Commission*, 285 Conn. 755, 771, 941 A.2d 917 (2008); see also *Bauer* v. *Waste Management of Connecticut, Inc.*, supra, 234 Conn. 254–55 ("[o]ur cases that have found a taking by practical confiscation have involved situations that required a landowner to leave his property in essentially its natural state").

When a reasonable use of the property exists, there can be no practical confiscation. For example, in *Kelly* v. *Zoning Board of Appeals*, 21 Conn. App. 594, 595, 575 A.2d 249 (1990), this court rejected a claim of practical confiscation with respect to an applicant's request for a variance to construct multifamily dwellings in a residential zone limited to single-family dwellings. We reasoned that "[n]owhere does the record show that [the applicant] cannot use the parcel of land in a manner consistent with the zoning regulations and in the same manner as the other properties on [the street]. . . . There was no evidence that a single-family subdivision could not be developed. [The applicant] presented no evidence that the limitation to single-family homes on that parcel would be confiscatory or would effectively destroy the economic utility of the parcel." Id., 598–99. Moreover, with respect to financial considerations, "[p]roof of financial hardship having a 'confiscatory or arbitrary' effect requires more than testimony that property can be sold only for a price substantially lower than can be obtained if a variance is granted to permit a use otherwise prohibited by the zoning regulations." *Grillo* v. *Zoning Board of Appeals*, 206 Conn. 362, 371, 537 A.2d 1030 (1988). Rather, there can be no practical confiscation unless "application of the regulations renders the property in question practically worthless." (Internal quotation marks omitted.) *Hoffer* v. *Zoning*

*Board of Appeals*, 64 Conn. App. 39, 44, 779 A.2d 214 (2001). Evidence that a property is not " 'practically worthless' " but "still possesses value" precludes a finding of practical confiscation. Id.

In the present case, the Superior Court rejected the applicants' claim of practical confiscation, noting that the 2010 assessor's card, which is part of the administrative record, indicates that the property's assessed value at the time of the public hearing was $221,000. Equally significant, the applicants presented no evidence that a denial of the requested variances would preclude *any* reasonable use of the property. Instead, they argued that their proposed expansion of the existing nonconforming structure would be a more reasonable use of the property. In so doing, they fail to appreciate the applicable legal standard, as it was incumbent upon them to offer "proof that denial of the variance would practically destroy the value of the property for *all* reasonable uses." (Emphasis added.) *Rural Water Co.* v. *Zoning Board of Appeals*, supra, 287 Conn. 297. It is undisputed that the existing nonconforming structure has been used as a residence in a residential district for many decades, which use is consistent with, and protected by, the regulations and the General Statutes. As was the case in *Rural Water Co.*, the applicants thus "failed to prove that [they] could not continue to use the property as it had been used for many years . . . ." Id. A denial of the requested variances, therefore, does not amount to a practical confiscation.

The second confiscation test, which we shall refer to as the "tantamount to confiscation" test, first was recognized in *Chevron Oil Co.* v. *Zoning Board of Appeals*, supra, 170 Conn. 146. *Chevron Oil Co.* involved a vacant lot located in a "CB-2 business zone, in which a gasoline service station is a permitted use."[31] Id., 147. The zoning regulation at issue required that "any building in a business zone be set back forty feet from the boundary of a residence zone." Id. As a result, "[t]he application of that setback requirement to the [vacant lot], when taken in conjunction with front yard and side yard setback requirements, would restrict its usable area to only 3600 square feet." Id., 147–48.

For that reason, an application was filed "with the defendant board of zoning appeals for a variance of the setback regulation from forty to twenty feet, and for certificates of approval for a gasoline station and for a limited repairer's license." Id., 148. The defendant board denied that request on the grounds that " 'the required variance in the setback line would not be in harmony with the purpose and intent of the ordinance'; that 'such hardship as exists is of the applicant's own making, inasmuch as he requested a zone change which now does not permit him to use the property as he now desires'; and that 'the property could be used for a permitted use without variance.' " Id. On appeal, the

Court of Common Pleas concluded that those reasons "lacked support in the record" and that "the application of the forty-foot setback regulation to the [applicant's] property would be tantamount to confiscation . . . ." Id.

Our Supreme Court affirmed that decision, noting that "[t]he regulations permit the use of 35 percent of the area of any lot in a CB-2 zone. The application of the setback regulation to the . . . [plaintiff's] property, because of its location and shape, would restrict its use to less than 15 percent of its area. That restriction would apply to any permitted use" of the vacant lot. Id., 150. Despite those limitations, the court determined that "[t]here was no 'practical confiscation' in the present case, since a portion of the subject property could be used for some permitted use if the variance were not granted." Id., 152. The court nevertheless proceeded to a consideration of the plaintiff's claim that "the setback regulation, as applied to the subject parcel, was tantamount to confiscation." Id., 151. It cited *Brecciaroli* v. *Commissioner of Environmental Protection*, 168 Conn. 349, 356, 362 A.2d 948 (1975), and *Horwitz* v. *Waterford*, 151 Conn. 320, 323–24, 197 A.2d 636 (1964), for the proposition that "[s]hort of regulation which finally restricts the use of property for any reasonable purpose resulting in a 'practical confiscation,' the determination of whether a taking has occurred must be made on the facts of each case with consideration being given not only to the degree of diminution in the value of the land but also to the nature and degree of public harm to be prevented and to the alternatives available to the landowner." (Internal quotation marks omitted.) *Chevron Oil Co.* v. *Zoning Board of Appeals*, supra, 170 Conn. 151. The court further stated that "[t]he extent of the deprivation must be considered in light of the evils which the regulation is designed to prevent." Id., 152. In weighing those factors, the court concluded that "the application of the setback regulation to the subject property would be tantamount to confiscation," which justified the granting of the requested variance. Id., 153.

The tantamount to confiscation test thus serves as a limited exception to the practical confiscation test. Whereas the latter requires "proof that denial of the variance would practically destroy the value of the property for all reasonable uses"; *Rural Water Co.* v. *Zoning Board of Appeals*, supra, 287 Conn. 297; the former applies in situations that fall just shy of that measure. This court clarified an applicant's burden with respect to those two differing confiscation standards in *Jaser* v. *Zoning Board of Appeals*, 43 Conn. App. 545, 546 n.2, 684 A.2d 735 (1996), citing to *Chevron Oil Co.* and stating that "an applicant must show not only that he is thwarted in a desired use of land, but also that he is *being completely or almost completely deprived* of the use of the value of that land." (Emphasis added.)

A denial of the requested variances in the present case would not cause such a result. This case is not like *Chevron Oil Co.*, in which an applicant sought to construct a new structure on a vacant lot, and the pertinent regulations restricted that proposed use to less than 15 percent of its area. *Chevron Oil Co.* v. *Zoning Board of Appeals*, supra, 170 Conn. 147–50. The applicants here have an existing residential structure that currently utilizes almost 50 percent of the property, and their proposal is to continue and expand that use.[32] *Chevron Oil Co.* instructs that we must consider the "extent of that deprivation" to the property owner. Id., 152. The application submitted to the board indicates that the existing structure presently covers nearly half the property, exceeding the .25 maximum lot coverage by .24. The applicants requested a variance to increase that lot coverage by .03, for a new lot coverage of 0.52. In their principal appellate brief, the defendants describe that increase as a "diminutive amount" and submit that the requested setback variances are "miniscule . . . ." If that be the case, we are hard-pressed to conclude that the resulting deprivation from a denial thereof is anything but minimal.

Although we normally would consider the degree of diminution in the value of the land; *Chevron Oil Co.* v. *Zoning Board of Appeals*, supra, 170 Conn. 151; no such evidence is contained in the record before us. The only evidence regarding the "value of the land"; id.; is the aforementioned assessor's card, which indicates that the property's assessed value at the time of the public hearing was $221,000.

*Chevron Oil Co.* also instructs that a reviewing court must consider "the alternatives available to the landowner." (Internal quotation marks omitted.) Id. The most obvious alternative, and one urged by McGrath at the public hearing,[33] is to continue to exercise their vested right in the nonconforming residential structure on the property, which has continued since 1925. That alternative is consistent with the aim of the regulations and the harm they were designed to prevent. This case is about the expansion of a nonconforming structure. The regulations at issue address such structures at great length, describing in detail the intent of the town to not "encourage [the] survival" of such nonconformities or permit any expansion thereof, because "[s]uch uses are . . . incompatible with permitted uses in the districts involved . . . ." Branford Zoning Regs., §§ 8.1.A.2 and 8.1.A.3. As our Supreme Court has observed, "[i]t is the intent of building zone regulations generally that nonconforming uses should not be allowed to increase, and an extension of the space allotted to a nonconforming use is a proscribed extension of that nonconforming use and is inconsistent with the policy and comprehensive plan of the regulations." *Raffaele* v. *Planning & Zoning Board of Appeals*, 157 Conn. 454, 462, 462, 254

A.2d 868 (1969); see also *Bauer* v. *Waste Management of Connecticut, Inc.*, supra, 234 Conn. 243 ("a nonconforming structure cannot be increased in size in violation of zoning ordinances, i.e., nonconforming additions may not be made to the nonconforming structure"); *Essex Leasing, Inc.* v. *Zoning Board of Appeals*, 206 Conn. 595, 607, 539 A.2d 101 (1988) ("the familiar goal of zoning [is] to abolish nonconforming uses as quickly as justice will tolerate"). Accordingly, "[t]he alteration or substantial remodeling of a building existing as a nonconforming use is logically inconsistent with the principle that [a]n essential purpose of zoning regulations is the stabilization of property uses . . . [and] fundamental structural improvements will serve only to perpetuate the nonconforming use." (Citation omitted; internal quotation marks omitted.) *Hyatt* v. *Zoning Board of Appeals*, supra, 163 Conn. 384. Given that long-standing principle of Connecticut law, which expressly is embodied in the regulations here, it is clear that reasonable alternatives are available to the applicants in the present case.[34]

In sum, the record does not substantiate the claim that the applicants are "being completely or almost completely deprived of the use of the value of that land." *Jaser* v. *Zoning Board of Appeals*, supra, 43 Conn. App. 546 n.2. A denial of the requested variances, therefore, does not amount to a practical confiscation, nor is it tantamount to confiscation. Accordingly, confiscation is not a proper basis for a finding of hardship in this case.

### H

As we have noted, the defendants have not alleged in this appeal, nor does the record substantiate, that the application of the regulations destroys the value of the property "for all reasonable uses."[35] *Rural Water Co.* v. *Zoning Board of Appeals*, supra, 287 Conn. 297. Instead, they argue that a more reasonable use exists—namely, an expanded and modernized residential structure. That contention, which was a primary point of discussion during the public hearing, reflects a misunderstanding of the concept of hardship under Connecticut law.

At the public hearing, the applicants maintained that their requests did not amount to "an excessive utilization of the variance . . . procedure." Berdon, described by the board's chairman as "the most vocal person on this application," opined during the hearing that applicants are "entitled to, under the law, to variances . . . that allows them to use their property to a reasonable extent . . . . [T]he status of the property, as it currently sits, is to some extent immaterial because they're entitled to get variances to a reasonable extent. To use the property to a reasonable extent." At that point, Harrington stated, "I agree with that one hundred percent." When McGrath spoke in opposition to the application, Berdon questioned whether he "would

agree that variances . . . are designed [and] entitle . . . people reasonable use of their property." McGrath stated that he did not agree. Instead, McGrath submitted that variances are designed to provide relief to applicants that can demonstrate "a hardship . . . owing to the characteristics of the land, that's unique to their property and not present in the general zoning district." McGrath then argued that because a reasonable use already existed on the property, the applicants could not establish the requisite hardship, as the application of the regulations to the property did not deny them the reasonable benefit thereof.[36] During the board's deliberations, Berdon was the only member who addressed the issue of reasonable use, stating in relevant part that "what was constructed in the past is not a reasonable use of the property, and I think what he has proposed is certainly within reason. I think that they're reasonable requests . . . ."

The term "reasonable use" permeates our zoning cases, often without context or elaboration.[37] It originates in decisions addressing practical confiscation. One illustrative case is *Del Buono* v. *Board of Zoning Appeals*, 143 Conn. 673, 674, 124 A.2d 915 (1956), which involved a property originally "zoned for industry" that later was reclassified in a residential zone. In finding a practical confiscation, the Supreme Court stated: "Because of the zonal classification in which the plaintiff's property has been placed, he has, for all practical ends, lost all right to its enjoyment, since it has been stripped of every use to which it might reasonably be put. . . . [T]he fact that the land is in a [residential] zone precludes its use for any purpose for which it is or can reasonably be made adaptable and compels the owner to use it, if at all, for a purpose for which it is utterly unfitted. A classification permanently restricting the enjoyment of property to such an extent that it cannot be utilized for any reasonable purpose goes beyond valid regulation and constitutes a taking without due process. . . . [Such a] classification would be unreasonable and confiscatory." (Citation omitted.) Id., 677–78. Under those circumstances, the court held that "the plaintiff was entitled to have his land removed from uselessness . . . ." Id., 678; see also *Gregorio* v. *Zoning Board of Appeals*, 155 Conn. 422, 428, 232 A.2d 330 (1967) ("[t]o grant the variance it was necessary for the board to find [inter alia] that the strict application of the provisions of the regulations would deprive the applicant of the reasonable use of the land or buildings"); *Samp Mortar Lake Co.* v. *Town Plan & Zoning Commission*, 155 Conn. 310, 315, 231 A.2d 649 (1967) ("[t]here is little doubt that the plaintiff will be disadvantaged economically by the change of zone, but the change does not amount to confiscation or deprive the plaintiff of all reasonable use of his land").

In considering the issue of whether a "reasonable use" exists, we repeat that "[v]ariances cannot be per-

sonal in nature, and may be based *only* upon property conditions." (Emphasis added.) *Reid* v. *Zoning Board of Appeals*, supra, 235 Conn. 857. The preference of, and convenience to, a particular property owner is irrelevant to the hardship question. See, e.g., *Moon* v. *Zoning Board of Appeals*, supra, 291 Conn. 26 n.9 (personal "inconvenience" not "hardship necessary for the approval of a variance"); *Garibaldi* v. *Zoning Board of Appeals*, supra, 163 Conn. 239–40 ("[p]ersonal hardships" such as a property owner's "personal needs, preferences and circumstances . . . do not provide sufficient grounds for the granting of a variance"). For that reason, our Supreme Court has indicated that "[t]he basic zoning principle that zoning regulations must directly affect land, not the owners of land . . . limits the ability of zoning boards to act for personal rather than principled reasons" in exercising the variance power. (Citation omitted; internal quotation marks omitted.) *Reid* v. *Zoning Board of Appeals*, supra, 857–58. The court likewise consistently has held that "disappointment in [the] use of [the] property" does not constitute legal hardship under our law. *Moon* v. *Zoning Board of Appeals*, supra, 26 n.9; *Berkman* v. *Board of Appeals on Zoning*, supra, 135 Conn. 399–400. It therefore is hardly surprising that we can uncover no authority in which our Supreme Court has found sufficient hardship present where an applicant presently enjoyed a reasonable use of the property under the regulations, but nevertheless preferred an alternate one. The defendants likewise have not furnished any such authority. Contra *Rural Water Co.* v. *Zoning Board of Appeals*, supra, 287 Conn. 296–97 (applicant "had not met its burden to show unusual hardship" when it "failed to prove that it could not continue to use the property as it had been used for many years").[38]

The defendants nevertheless posit that "the real test for hardship is whether the condition of the property is such that it would preclude the establishment of a reasonable, permitted use. If it would, then the test for hardship may be met regardless of what other use may already exist on the parcel."[39] For multiple reasons, we disagree.

First and foremost is the fact that the defendants' proposition is contrary to the precedent of this state's highest court indicating that the personal preference of a property owner is irrelevant to the hardship determination; see *Moon* v. *Zoning Board of Appeals*, supra, 291 Conn. 26 n.9; *Rural Water Co.* v. *Zoning Board of Appeals*, supra, 287 Conn. 296–97; *Reid* v. *Zoning Board of Appeals*, supra, 235 Conn. 857; *Garibaldi* v. *Zoning Board of Appeals*, supra, 163 Conn. 238–39; and disappointment in the use of one's property does not constitute legal hardship. See *Moon* v. *Zoning Board of Appeals*, supra, 26 n.9; *Longo* v. *Board of Zoning Appeals*, 143 Conn. 395, 398, 122 A.2d 784 (1956); *Berkman* v. *Board of Appeals on Zoning*, supra, 135 Conn.

399–400. Furthermore, in the context of existing nonconformities, our Supreme Court has held that "nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit—[i]n no case should they be allowed to increase." (Internal quotation marks omitted.) *Adolphson* v. *Zoning Board of Appeals*, supra, 205 Conn. 710; see also *Bauer* v. *Waste Management of Connecticut, Inc.*, supra, 234 Conn. 243 ("a nonconforming structure cannot be increased in size in violation of zoning ordinances, i.e., nonconforming additions may not be made to the nonconforming structure"). As an intermediate appellate court, this panel is not at liberty to discard, modify, reconsider, reevaluate or overrule that precedent. See *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, 121 Conn. App. 31, 48–49, 994 A.2d 262, cert. denied, 297 Conn. 918, 996 A.2d 277 (2010), and case law cited therein.

Second, this court has rejected the precise claim advanced by the defendants in this appeal. In *Vine* v. *Zoning Board of Appeals*, 93 Conn. App. 1, 9 n.14, 887 A.2d 442 (2006), rev'd, 281 Conn. 553, 916 A.2d 5, aff'd after remand, 102 Conn. App. 863, 927 A.2d 958 (2007), this court concluded that it is not proper to grant a variance "on the basis of the denial of reasonable use of the property. To adopt such a standard would represent a significant change in our zoning jurisprudence, namely, our Supreme Court's repeated instructions that variances are to be granted sparingly and only in exceptional situations."[40] We concur with that assessment, and note that if the well established hardship standard is to be modified, such modification is the prerogative of our Supreme Court.

Third, at its essence, the defendants' proposition asks this court to eviscerate the hardship standard under Connecticut law. If the measure to be applied merely is whether an applicant is proposing a use of the property that is "within reason," as was suggested by one board member during the public hearing, then we arrive at a place where "most setback variance applications would have to be granted." (Internal quotation marks omitted.) *Bloom* v. *Zoning Board of Appeals*, supra, 233 Conn. 211 n.13. Such a legal standard for hardship would effectively preclude any meaningful review of a board's decision to grant a variance, so long as the decision included a finding that the proposed activity was reasonable.

While the hardship standard in our law may appear a formidable one; see, e.g., *Aitken* v. *Zoning Board of Appeals*, 18 Conn. App. 195, 205, 557 A.2d 1265 (1989) (noting "the stringent requirements for establishing hardship"); the alternative is far less attractive. The "reasonable use" standard proposed by the defendants here would undermine the essential purpose of land

use regulation, which is "to adopt measures to regulate property uses in conformance with a comprehensive plan in a manner to advance . . . the public health, safety, morals and general welfare." (Citations omitted.) *Steiner, Inc.* v. *Town Plan & Zoning Commission*, supra, 149 Conn. 75–76. Under the relaxed standard advanced by the defendants, "the whole fabric of town- and city-wide zoning will be worn through in spots and raveled at the edges until its purpose in protecting the property values and securing the orderly development of the community is completely thwarted." (Internal quotation marks omitted.) *Pleasant View Farms Development, Inc.* v. *Zoning Board of Appeals*, supra, 218 Conn. 270–71; accord M. Zizka et al., State & Local Government Land Use Liability (2013) § 15:1, p. 15-1 ("[s]ince the issuance of a variance effectively causes at least a minor tear in the fabric of the comprehensive regulatory scheme, variances should not be granted lightly"). We therefore decline to apply that proposed standard in the present case. Rather, we adhere to the precedent of our Supreme Court.

During the public hearing, the board's chairman summarized his interpretation of the applicants' request as follows: "What I'm hearing [from the applicants] is, we have a structure that is old, it's falling apart . . . it's in need of major renovations . . . regardless of whether it gets expanded or not. But *since we're going to go through all that, we might as well*, rather [than] to maintain the status quo, we're going to *ask for permission to improve it and enlarge it somewhat.* That's what I'm hearing." (Emphasis added.) That observation aptly summarizes what this case is about. A variance is not a tool of convenience, but one of necessity. They are to be granted when the strict application of the regulations results in unusual hardship peculiarly affecting the property. They are not to be granted when a reasonable use already is present, or plainly is possible under the regulations, but an owner prefers otherwise. See *Rural Water Co.* v. *Zoning Board of Appeals*, supra, 287 Conn. 296–97 (applicant "had not met its burden to show unusual hardship" when it "failed to prove that it could not continue to use the property as it had been used for many years"); *Bauer* v. *Waste Management of Connecticut, Inc.*, supra, 234 Conn. 256 (variance not justified "when the landowner cannot take advantage of a myriad of uses acceptable under the applicable regulations because of choices the landowner itself has made that limit its land use options"); *Green Falls Associates, LLC* v. *Zoning Board of Appeals*, supra, 138 Conn. App. 94 (because "the plaintiff can build a smaller house and likely comply with all regulations" it was not entitled to variance; inability to build "its desired house" was merely disappointment); *Jaser* v. *Zoning Board of Appeals*, supra, 43 Conn. App. 548 ("hardship was not shown because the plaintiffs admitted that a house, even though not the type that they desired, could

have been built on the lot while conforming to the setback requirements").

In the present case, the regulations protect the applicants' vested right to continue the residential use of their existing nonconforming structure. See Branford Zoning Regs., §§ 8.1.A.2 and 8.1.B. The applicants did not elect to surrender the "advantages" of that nonconformity; *Kleinsmith* v. *Planning & Zoning Commission*, supra, 157 Conn. 314; in seeking a more spacious and modern residence. Instead, they want to continue and expand the nonconformity, in contravention of the express intent of the regulations. Branford Zoning Regs., § 8.1.A.3. The record, however, furnishes no basis to conclude that a legal hardship exists on their property justifying the variances requested in the present case.

I

In light of the foregoing, we need not discuss the small size of the applicants' parcel in much detail. This is not a case where, absent the requested variances, the application of the regulations precludes the use of the property for a permitted residential purpose. Contra *Lessner* v. *Zoning Board of Appeals*, supra, 151 Conn. 168–70; *Archambault* v. *Wadlow*, supra, 25 Conn. App. 382–83. This also is not a case where the "variance application was submitted for the board's consideration as if the lot were vacant" because "[t]he existing [nonconforming residential structure] is to be razed and replaced with a new structure . . . ."[41] *Stancuna* v. *Zoning Board of Appeals*, 66 Conn. App. 565, 573, 785 A.2d 601 (2001). Although the defendants have offered a hypothetical comparison of the applicants' parcel in a vacant state to the property at issue in certain cases, such as *Chevron Oil Co.* v. *Zoning Board of Appeals*, supra, 170 Conn. 146, it remains that the property is not vacant. We therefore decline to resort to speculation and conjecture, which "have no place in appellate review." (Internal quotation marks omitted.) *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 502, 510, 970 A.2d 578 (2009).

IV

The defendants also claim that the court improperly concluded that the record failed to disclose any hardship that was unusual or unique to the property. We disagree.

In the seminal case of *Ward* v. *Zoning Board of Appeals*, supra, 153 Conn. 143, our Supreme Court noted that the requirement that a claimed hardship must be unusual and unique to the property "is a fundamental one in zoning law . . . ." As it explained, "[o]ne seeking a variance must show that his property is peculiarly disadvantaged by the operation of the zoning ordinance and not merely that a general hardship, equally applicable to other properties in the neighborhood, results from a strict enforcement of the code." Id. The court

emphasized that "[t]he granting of a variance must be reserved to those situations involving exceptional or unusual circumstances"; id., 145; and then detailed precisely why the decision to grant a variance in that case was improper: "In upholding the board's action, the court may seem to have condoned the board's use of its variance power to alter the zoning classification of an entire neighborhood. Such a practice is incompatible with established zoning procedures and ignores the rule, so often emphasized by this court, that a variance may not be granted unless the applicant can show that the zoning ordinance works a distinct hardship on his particular piece of property and not merely a general hardship on the neighborhood at large." Id., 146. Accordingly, because "[t]he record . . . fails to demonstrate that a strict application of the ordinance created an unreasonable hardship or had any adverse effect on the property of the [applicants] in comparison with other properties in the same general area," the court sustained the appeal. Id., 147.

Under Connecticut law, "a *unique* hardship, imposed by conditions outside the property owner's control, is a condition precedent to the issuance of a zoning variance." (Emphasis in original.) *Michler* v. *Planning & Zoning Board of Appeals*, supra, 123 Conn. App. 185; see also *Wnuk* v. *Zoning Board of Appeals*, 225 Conn. 691, 699 n.11, 626 A.2d 698 (1993) ("[t]he hardship would not be unique to the owner's property . . . and therefore could not support a grant of variance"); *Bloom* v. *Zoning Board of Appeals*, supra, 233 Conn. 207–208 (proof of unusual hardship "is absolutely necessary" to obtain variance); *B. I. B. Associates* v. *Zoning Board of Appeals*, 163 Conn. 615, 617, 316 A.2d 414 (1972) ("the claimed hardship is not one unique to the property of the applicants"); 9 R. Fuller, supra, § 9.3, p. 242 ("[a] person is not entitled to a variance where the hardship claimed is not different in kind from that generally affecting property in the same zoning district, namely the hardship is not unique or unusual"). An applicant therefore bears the burden of establishing, on the record of the proceeding before the zoning board of appeals, that the claimed hardship is peculiar to its property and not one generally present in the zoning district. See *Komondy* v. *Zoning Board of Appeals*, 127 Conn. App. 669, 678, 16 A.3d 741 (2011) ("[T]he burden rests with the applicant [seeking a variance] to demonstrate its entitlement to the requested relief. . . . It thus is incumbent on an applicant to provide an evidentiary basis, whether through testimony, documentation or a combination thereof, in support of its plea for relief." [Citations omitted.]).

In an administrative appeal challenging the decision of the board to grant a variance, a reviewing court must examine the record to ascertain whether it contains substantial evidence that the claimed hardship did not apply to other properties in the area. See *Vine* v. *Zoning*

*Board of Appeals*, supra, 281 Conn. 559–60. As our Supreme Court stated in a case where a zoning board of appeals, like the present case, did not make any finding of unique hardship: "[T]he board made no specific finding that exceptional difficulty or unnecessary hardship would result to the owner of the property from the strict enforcement of the regulations. It described no special circumstances in detail which do not apply to other properties in the area and which constitute a hardship to the applicants . . . . Moreover, such findings cannot be implied from the minutes or from other portions of the record before us. . . . [T]he variance, therefore, was not properly granted." *Gross* v. *Planning & Zoning Board of Appeals*, 171 Conn. 326, 328, 370 A.2d 944 (1976); see also *Francini* v. *Zoning Board of Appeals*, supra, 228 Conn. 791 ("there were many other nonconforming lots in the area that were subject to the same zoning restrictions as the plaintiff's property"); *Grillo* v. *Zoning Board of Appeals*, supra, 206 Conn. 373 (because "[t]he record does not indicate how many other property owners in the zone also had" same hardship present on their property, "[t]here is no basis . . . for assuming that [the applicant's] situation was essentially different from that of many others in the area"); *Allen* v. *Zoning Board of Appeals*, supra, 155 Conn. 510 (stating that "there is nothing which significantly distinguishes the [applicant's] property from other property located on either [the street] or on the cul-de-sac [on which the property is located]. Unless such dissimilarity is shown, the board may not properly vary the application of the regulations."); *Kelly* v. *Zoning Board of Appeals*, supra, 21 Conn. App. 599 ("[t]here was no evidence that the application of the existing zoning regulation affected this particular parcel in a manner distinct from neighboring properties"); *Green* v. *Zoning Board of Appeals*, 4 Conn. App. 500, 504, 495 A.2d 290 (1985) (same); 2 P. Salkin, American Law of Zoning (5th Ed. 2011) § 13:16, pp. 13-46 and 13-47 ("[w]here unnecessary hardship is required for a variance, the applicant must also show that the alleged hardship relating to the property is unique").[42]

A review of the record in the present case reveals no legally cognizable hardship that does "not apply to other properties in the area . . . ." *Gross* v. *Planning & Zoning Board of Appeals*, supra, 171 Conn. 328. The size of the applicants' parcel arguably presents their strongest case for hardship, as the buildable area, consistent with the setback and lot coverage requirements of the R-2 district, is quite small. The application of the regulations to their property in that regard is not unique. As the Superior Court correctly noted in sustaining the administrative appeal, "[a] careful review of a map of the neighborhood contained in the record confirms [that] [m]any properties . . . are as small as, or even smaller, than the [applicants'] property." Our review of the zoning map[43] likewise confirms that several proper-

ties in the R-2 district are of a comparable size and suffer similar limitations in terms of buildable area. To paraphrase *Celentano, Inc.* v. *Board of Zoning Appeals*, 149 Conn. 671, 674, 184 A.2d 49 (1962), "[t]he hardship claimed is in no sense peculiar" to the applicants' property.

As specifically described in the regulations, the R-2 district consists "of residential areas that have been developed over a period of years primarily with single-family houses for seasonal as well as year-round occupancy on relatively small lots." Branford Zoning Regs., § 3.2.B.1. In *Chapman* v. *Zoning Board of Appeals*, 23 Conn. App. 441, 442, 581 A.2d 745 (1990), we considered a variance application for a "property . . . located on the west shore of Rogers Lake in Old Lyme, an area consisting of small parcels, a number of which contain seasonally used cottages." The applicant in *Chapman* "sought a variance from zoning regulations governing minimum lot area, side yard area, and rear yard area in order to construct a 1380 square foot house," claiming, inter alia, that "the enforcement of the zoning regulations caused the plaintiff unusual hardship entitling him to a variance . . . ." Id. The board unanimously denied that request, concluding that the applicant "failed to establish that a unique hardship existed . . . ." Id. On appeal, we affirmed the propriety of that determination, stating that "[a] hardship must be different in kind from that generally affecting properties in the same zone. . . . Here, other lots in the same zoning district as the [applicant's] also were nonconforming. Therefore, the record supports the board's conclusion that the [applicant] did not suffer any unusual or unique hardship."[44] (Citations omitted.) Id., 443. The Superior Court's determination that the claimed hardship in the present case is not unique is consistent with that precedent.

In extolling the "salutary result" of granting variances in such "older neighborhoods"—namely, the prevention of "dilapidation and blight"—the defendants encourage us to take judicial notice of "the widespread existence of such small-lot, waterfront communities in this state."[45] In so doing, they fail to appreciate the "fundamental distinction between the legislative function of the zoning commission, and the administrative and quasi-judicial functions of the zoning board of appeals . . . ." T. Tondro, supra, p. 129. As we recently observed, "[t]he variance power exists to permit what is prohibited in a particular zone. . . . In simple terms, the zoning commission acts as a land use legislature in enacting zoning requirements. . . . By contrast, the zoning board of appeals is the court of equity of the zoning process . . . . [Z]oning commissions and zoning boards of appeal are, by design and by statute, independent branches of a municipality's land use department." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *MacKenzie* v. *Plan-*

*ning & Zoning Commission*, 146 Conn. App. 406, 429–30, 77 A.3d 904 (2013).

To the extent that the defendants argue that the variance power properly may be wielded to foster such "salutary" results in a given district, they are mistaken. "When a zoning board of appeals grants a variance on grounds which apply equally to a large number of properties in a given area, it in effect establishes a new zoning regulation applicable to that area. . . . Arguments concerning the general unsuitability of a neighborhood to the zoning classification in which it has been placed are properly addressed to the promulgators of the ordinance and not to those who have been empowered to grant variances. . . . The granting of a variance must be reserved to those situations involving exceptional or unusual circumstances." (Citation omitted; footnote omitted.) *Ward* v. *Zoning Board of Appeals*, supra, 153 Conn. 144–45. "[T]he purpose of variances . . . is not to work major changes in a zoning plan, or to correct errors of judgment in zoning." (Footnotes omitted.) 101A C.J.S., supra, § 301, p. 387. The variance is an instrument of relief, not rezoning. As our Supreme Court has held, "[a variance] should not be used to accomplish what is in effect a substantial change in the uses permitted in a residence zone. That is a matter for the consideration of the zoning commission. . . . The power to repeal, modify or amend a zoning ordinance rests in the municipal body which had the power to adopt the ordinance, and not in the zoning board of appeals." (Citation omitted; internal quotation marks omitted.) *Kaeser* v. *Zoning Board of Appeals*, supra, 218 Conn. 446; see also 3 E. Yokley, Zoning Law and Practice (4th Ed. MacGregor 2010) § 19-2, p. 19-16 ("[b]oards are created to help make zoning ordinances workable, not to sit as judicial bodies to determine the propriety of their adoption"); 101A C.J.S., supra, § 305, p. 396 ("[u]nder the guise of a variance, the zoning board may not waive, suspend, disregard, or ignore the zoning regulations, depart from them, set them aside, or nullify them" [footnote omitted]). If the requirements of the R-2 residential district are particularly oppressive to the many undersized properties therein, the proper forum for redress is the town zoning commission.

Furthermore, as exemplified by Harrington's observation during the public hearing, this case is not about repair, but rather the expansion of the nonconformity of an existing structure.[46] To obtain a variance, the applicants bore the burden of establishing a legally cognizable hardship that peculiarly affected their property, rather than numerous properties in the R-2 district. The small buildable area on their parcel that results from the application of the regulations at issue is an affliction shared by several other properties in that district. It, therefore, is not a unique hardship warranting exercise of the variance power.

V

We note that a narrow exception exists to the traditional test for obtaining a variance, on which a board properly may grant a variance despite an applicant's failure to establish the requisite hardship. In *Adolphson* v. *Zoning Board of Appeals*, supra, 205 Conn. 705, the applicants owned property located in an industrial zone, on which existed an aluminum casting foundry, which was a nonconforming use. The applicants sought certain variances in order to use the property as an automobile repair shop, despite the fact that such use also was prohibited in that industrial zone. Id., 706. The Zoning Board of Appeals nonetheless granted the requested variances, and the Superior Court upheld that decision on appeal, concluding that "the proposed use for the subject property operating under current regulations as to air pollution and the like would be far less offensive to the surrounding residents than a foundry." (Internal quotation marks omitted.) Id.

A divided Supreme Court affirmed that determination. The majority opinion emphasized that the applicants were seeking "to change an established nonconforming use to a less offensive nonconforming use." Id., 712. In that regard, the majority distinguished cases in which applicants sought to expand a nonconformity; id., 708; recognizing the well established principle of Connecticut law that "nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit—[*i*]*n no case should they be allowed to increase*." (Emphasis added; internal quotation marks omitted.) Id., 710. The court continued: "The accepted method of accomplishing the ultimate object is that, while the alien use is permitted to continue until some change is made or contemplated, thereupon, so far as is expedient, advantage is taken of this fact to compel a lessening or suppression of the nonconformity." (Internal quotation marks omitted.) Id. In light of the "unchallenged finding" that the proposed use " 'would be far less offensive' " than the existing nonconforming use, the court held that the Zoning Board of Appeals properly granted the requested variances.[47] Id.

This court applied that exception three years later in *Stancuna* v. *Zoning Board of Appeals*, supra, 66 Conn. App. 565. The property at issue contained a nonconforming use—a single-family residence in a commercial zone. Id., 571. The applicant sought a variance of certain side yard setback requirements to permit the construction of a new commercial building, which the Zoning Board of Appeals granted. Id., 567. We affirmed that decision, citing to *Adolphson* and stating, "[t]hat a variance will eliminate a nonconforming use constitutes independent grounds for sustaining the granting of a variance." Id., 572. Because "the variance eliminates the nonconforming residential use of the property and

allows a commercial use in a commercial zone," this court concluded that the variance properly was granted.[48] Id.

The limited exception articulated in *Adolphson* most recently was applied by our Supreme Court in *Vine* v. *Zoning Board of Appeals*, supra, 281 Conn. 553. In that case, the court noted that "[i]n cases in which an extreme hardship has not been established, the reduction of a nonconforming use to a less offensive prohibited use may constitute an independent ground for granting a variance." Id., 562. The court ultimately concluded that the zoning board's "decision to grant the variance was proper because it reduced the preexisting nonconforming use of the property to a less offensive use." Id., 563; see also *Morikawa* v. *Zoning Board of Appeals*, supra, 126 Conn. App. 413 (recognizing "that case law has carved out a narrow exception" to unusual hardship requirement); *Hescock* v. *Zoning Board of Appeals*, 112 Conn. App. 239, 242, 260–61, 962 A.2d 177 (2009) (in case where applicants "wanted to raze the [existing nonconforming residential structure] that occupied their property and to construct a new one," Superior Court "properly concluded that the [*Adolphson* exception] was fully applicable to the present circumstances" because "there was substantial evidence that the new construction would reduce and eliminate existing nonconformities").

The present case does not qualify under the *Adolphson* exception to the hardship requirement. The applicants here proposed *increasing* the existing nonconformity. Among their requests was a variance from the regulation prohibiting such expansion. The proposed expansion plainly would not result in lesser nonconformity on the applicants' property.

## VI

Even if the defendants qualified under the *Adolphson* exception or otherwise demonstrated a peculiar hardship, they still could not prevail, as applicants seeking a variance also must demonstrate that the requested relief will not "affect substantially the comprehensive zoning plan . . . ." (Internal quotation marks omitted.) *Moon* v. *Zoning Board of Appeals*, supra, 291 Conn. 24. Put differently, "a variance should not be granted unless it is in harmony with the general purpose and intent of the zoning ordinance." *Krejpcio* v. *Zoning Board of Appeals*, 152 Conn. 657, 662, 211 A.2d 687 (1965); see also 3 E. Yokley, Zoning Law and Practice (4th Ed. MacGregor 2010) § 20-1, pp. 20-1 and 20-2 (a variance "waives the strict letter of the zoning ordinance while at the same time it preserves, or should preserve, the spirit and purpose of the ordinance). Following the commencement of this appeal by the defendants, the plaintiff filed a timely alternate ground of affirmance pursuant to Practice Book § 63-4 (a) (1), claiming that the applicants failed to demonstrate that the requested

variances would not substantively impact the town's comprehensive plan.

"The comprehensive plan is found in the zoning regulations themselves." *Pike* v. *Zoning Board of Appeals*, 31 Conn. App. 270, 277, 624 A.2d 909 (1993). In *Raffaele* v. *Planning & Zoning Board of Appeals*, supra, 157 Conn. 454, our Supreme Court addressed whether the proposed expansion of a nonconformity was in harmony with the comprehensive zoning plan. The court noted that "[a]n essential element in the board's consideration of the appeal would be the settled proposition that zoning regulations in general seek the elimination rather than the enlargement of nonconforming uses." Id., 458. In reviewing the regulations at issue, the court stated that "[n]owhere in the regulations is there any indication that an extension of a nonconforming use is to be permitted. . . . It is the intent of building zone regulations generally that nonconforming uses should not be allowed to increase, and an extension of the space allotted to a nonconforming use is a proscribed extension of that nonconforming use and is inconsistent with the policy and comprehensive plan of the regulations." (Citation omitted.) Id., 462; accord *Bauer* v. *Waste Management of Connecticut, Inc.*, supra, 234 Conn. 243 ("a nonconforming structure cannot be increased in size in violation of zoning ordinances, i.e., nonconforming additions may not be made to the nonconforming structure"); 4 E. Yokley, Zoning Law and Practice (4th Ed. MacGregor 2003) § 22-7, p. 22-38 ("[n]onconforming uses . . . are not to be enlarged in derogation of the general zoning scheme").

The court likewise set aside the granting of a variance in *Bradley* v. *Zoning Board of Appeals*, 165 Conn. 389, 334 A.2d 914 (1973), due to a lack of harmony with the comprehensive plan. The court stated in relevant part that "[t]o allow zoning boards of appeal to grant variances authorizing uses nowhere permitted in the zoning regulations of the town would fly in the face of that clearly expressed policy. To do so would, in effect, give zoning boards the capacity to shape the development of the community with little or no regard for the community plan as expressed in the general zoning regulations . . . . [W]e fail to see how the authorization of a use not permitted in the zoning regulations possibly could be in harmony with their intent and purpose." (Citation omitted.) Id., 393. Cognizant of the "fundamental distinction between the legislative function of the zoning commission, and the administrative and quasi-judicial functions of the zoning board of appeals"; T. Tondro, supra, p. 129; the court explained that "[b]y authorizing a use not permitted within the zoning regulations the board, in effect, amended those regulations. . . . [T]he granting of the variance authorizing a use nowhere permitted in the zoning regulations was not 'in harmony' with those regulations and clearly amounted to an amendment thereto. Such an action endangers the

orderly process of zoning, usurps the legislative function of the zoning and planning commission, and is thus illegal and an abuse of the board's discretion." (Citations omitted.) *Bradley* v. *Zoning Board of Appeals*, supra, 395–96.

That logic applies with equal force here. The present case involves a request to expand the nonconformity of an existing structure. The regulations expressly articulate a policy precluding the expansion thereof. Section 8.1.A.3 provides in relevant part that "[i]t is . . . the intent of this [s]ection that nonconformities shall not be enlarged, expanded or extended if such a change increases the nonconformity, nor shall they be used as grounds for adding other structures or uses prohibited elsewhere in the same district." Section 8.1.B requires in relevant part that "[a]ny changes to the nonconforming use or structure shall be in compliance with these [r]egulations." Section 8.1.C.1 specifies that "[n]o nonconforming use of land shall be enlarged, extended or altered, and no structure or part thereof devoted to a nonconforming use shall be enlarged, extended, reconstructed or structurally altered, except where the result of such changes is to reduce or eliminate the nonconformity." Section 8.1.C.2 provides in relevant part that "[n]o nonconforming use of a structure shall be extended to occupy land outside such structure . . . ." Section 8.1.C.3 similarly provides that "[n]o building or other structure that does not conform to the requirements of these regulations regarding the building height limit, area and width of lot, percentage of lot coverage, and required yards and parking facilities shall be enlarged unless such enlarged portion conforms to the regulations applying to the district in which it is located." Section 8.1.D.5 provides in relevant part that "[n]o building, structure or use in a nonconforming location may be . . . expanded into a different nonconforming location." As was the case in *Raffaele*, nowhere in the regulations is there any indication that an expansion of an existing nonconforming structure that increases the nonconformity is to be permitted.[49] The granting of multiple variances to permit such expansion thus flies in the face of the clearly expressed policy of the regulations. Accordingly, we conclude that the record does not substantiate the necessary finding that the variances granted are in harmony with the comprehensive plan.

## VII

We have scoured the entire record in search of a proper basis for the board's decision to grant the requested variances to expand the existing nonconforming structure. The record does not substantiate a finding that (1) a legally cognizable hardship exists peculiarly affecting the applicants' property, or (2) the proposed expansion would not affect substantially the comprehensive zoning plan. The record also indicates

that the *Adolphson* exception does not apply. We therefore conclude that the Superior Court properly sustained the plaintiff's administrative appeal.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "In hearing the plaintiff's appeal from the decision of the zoning board of appeals, the Superior Court acts as an appellate body." *Megin* v. *Zoning Board of Appeals*, 106 Conn. App. 602, 603 n.1, 942 A.2d 511, cert. denied, 289 Conn. 901, 957 A.2d 871 (2008).

[2] Unless otherwise indicated, all references to the regulations in this opinion pertain to the 2011 revision thereof.

[3] The variance application submitted to the board indicates that the existing structure intrudes upon the fifteen foot front setback by approximately thirteen and one-half feet, the twenty foot rear setback by approximately thirteen and one-half feet, the ten foot westerly side setback by approximately eight and one-half feet, and the ten foot easterly side setback by approximately two and one-half feet.

[4] The variance application submitted to the board indicates that the existing structure exceeds the .50 maximum floor area by .22 and exceeds the .25 maximum lot coverage by .24. We note that the regulations deliberately utilize decimals rather than percentages. As Jennifer Fisher from LWF Land Surveying explained during the public hearing on the applicants' request for variances, "[t]he way the new regulations were written, under the revised regulations they changed it to [decimals so] people can multiply that."

[5] General Statutes § 8-2 (a) provides in relevant part that municipal zoning "regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations. . . ."

General Statutes (Rev. to 2011) § 8-13a (a) provides: "When a building is so situated on a lot that it violates a zoning regulation of a municipality which prescribes the location of such a building in relation to the boundaries of the lot or when a building is situated on a lot that violates a zoning regulation of a municipality which prescribes the minimum area of the lot, and when such building has been so situated for three years without the institution of an action to enforce such regulation, such building shall be deemed a nonconforming building in relation to such boundaries or to the area of such lot, as the case may be."

General Statutes § 8-26a, titled "Effect of change in subdivision or zoning regulations or boundaries of districts after approval of plan," similarly provides in relevant part that "[t]his subsection shall not alter or affect a nonconforming use or structure as provided in section 8-2."

[6] The record indicates that the applicants previously requested, and the board granted, similar variances for the property in 2009. As required by General Statutes § 8-3d, the applicants then filed those variances on the town land records. *Verrillo* v. *Zoning Board of Appeals*, Superior Court, judicial district of New Haven, Docket No. CV-09-4036920-S (June 21, 2010) (50 Conn. L. Rptr. 161). The plaintiff thereafter commenced an appeal of that decision in the Superior Court. While that appeal was pending, the applicants signed a document titled "Affidavit of Waiver and Relinquishment of Variances." After reciting the aforementioned procedural history, the document stated that "[i]n lieu of defending the Appeal, we hereby (a) relinquish the variances granted by the Board on March 26, 2009; (b) waive all rights that we or any of our successors or assigns may have otherwise had under such variances as owners of the property; and (c) authorize the Board to treat said variances as null and void. . . . We are executing this instrument willingly and with full knowledge of the significance of our waiver and relinquishment of the March 26 variances. We do not, however, waive the right to seek the same or similar variances from the Board in the future." Id. The applicants filed that affidavit on the town land records. Id. A copy of that signed affidavit was submitted as evidence before the board at its March 20, 2012 public hearing and, thus, is in the record before us.

The applicants then moved to dismiss the plaintiff's administrative appeal in the Superior Court, claiming that the affidavit rendered moot the plaintiff's appeal. The plaintiff opposed that motion, arguing that variances run with the land and are not personal in nature. See *Garibaldi* v. *Zoning Board of Appeals*, 163 Conn. 235, 239, 303 A.2d 743 (1972) ("[A] variance is not a personal exemption from the enforcement of zoning regulations. It is a legal status granted to a certain parcel of realty without regard to ownership.").

The plaintiff also argued that a dismissal of the appeal, in essence, would deprive him of his right to fundamental fairness, as the board would be bound to approve a future variance request for the property in light of its earlier decision on the matter. See, e.g., *Cumberland Farms, Inc.* v. *Groton*, 247 Conn. 196, 215, 719 A.2d 465 (1998) ("[t]he established law of this state . . . prohibits a zoning board of appeals from reversing its previous decision unless the facts and circumstances which actuated the decision are shown to have so changed as to vitiate or materially affect the reason which produced and supported it and no vested rights have intervened" [internal quotation marks omitted]).

Despite those objections, the court granted the applicants' motion to dismiss, reasoning that "[i]f the property owner must apply for the variance and the grant thereof is only effective upon its being recorded on the land records, why cannot the owner, on the very same land records, relinquish the variance and declare it null and void?" *Verrillo* v. *Zoning Board of Appeals*, supra, 50 Conn. L. Rptr. 163. The court then stated that "[o]ut of an excess of caution the court will grant the motion to dismiss but will also vacate the board's action in granting the variances—this only makes explicit the defendants' direction to the board to nullify its previous actions regarding the granting of the variances. Any future application for the same or similar variances must therefore be reviewed on a de novo basis by the board, and any future granting of such an application that relies on the action taken by the board in granting the variances that are the subject of this appeal would therefore be a grounds for reversal of any favorable action on such new application. The court, of course, is not vacating the action of the board based on an examination of the merits of the plaintiffs' appeal. The court views its action as a compromise between ensuring fundamental fairness to the plaintiffs' right to fully contest the merits of any future granting of an application for the same or similar variances. It also seeks to avoid what it believes would be the unnecessary burden and expense that would be imposed on the defendants by having to further contest this appeal when they have declared they have no present intention to act on the variances." Id., 164.

We are perplexed by that decision in multiple respects. Nonetheless, it remains that no appeal was taken from that judgment. We therefore do not consider the propriety of that decision in resolving the present appeal. At the same time, we do not necessarily endorse its holding.

At the outset of the public hearing in the present case, counsel for the applicants reviewed the history of the 2009 variances and submitted to the board that "your prior decision on [that matter] should not be considered by your board with regard to this application . . . ." The public hearing then proceeded on the merits of the new application without further mention of the 2009 variances. In this appeal, none of the parties raised any issues with respect to the variances granted by the board in 2009.

[7] Section 8.1.C.1 of the Branford Zoning Regulations provides: "No nonconforming use of land shall be enlarged, extended or altered, and no structure or part thereof devoted to a nonconforming use shall be enlarged, extended, reconstructed or structurally altered, except where the result of such changes is to reduce or eliminate the nonconformity."

Section 8.1.C.3 of the Branford Zoning Regulations provides: "No building or other structure that does not conform to the requirements of these regulations regarding the building height limit, area and width of lot, percentage of lot coverage, and required yards and parking facilities shall be enlarged unless such enlarged portion conforms to the regulations applying to the district in which it is located."

[8] The record indicates that the existing structure consists of a first floor, a second floor and a crawl space underneath the structure. The plan proposed raising the structure so that a garage, mechanical room and storage area could be located on the first level of the structure. The proposed second level would be similar to the first floor of the existing structure and contain the kitchen, dining, and living rooms, as well as a bathroom, enclosed front porch and staircase to the third floor. The proposed third level largely would resemble the second floor of the existing structure, albeit with an expanded master bedroom and the addition of a second bathroom on that floor. During the hearing, Karpuska stated that the existing second floor would become the third floor of the structure under the applicants' proposal.

[9] The court found that the plaintiff was statutorily aggrieved as the owner of abutting property. The defendants do not quarrel with that conclusion on appeal.

[10] "Scope of review and standard of review are often—albeit erroneously—

used interchangeably. The two terms carry distinct meanings and should not be substituted for one another. Scope of review refers to the confines within which an appellate court must conduct its examination. . . . In other words, it refers to the matters (or what) the appellate court is permitted to examine. In contrast, standard of review refers to the manner in which (or how) the examination is conducted." (Internal quotation marks omitted.) *Brunswick* v. *Statewide Grievance Committee*, 103 Conn. App. 601, 606–607 n.7, 931 A.2d 319, cert. denied, 284 Conn. 929, 934 A.2d 244 (2007).

[11] In *Gibbons* v. *Historic District Commission*, 285 Conn. 755, 771, 941 A.2d 917 (2008), our Supreme Court expressly overruled *Stankiewicz* v. *Zoning Board of Appeals*, 211 Conn. 76, 556 A.2d 1024 (1989), aff'g 15 Conn. App. 729, 546 A.2d 919 (1988), to the extent that it conflicted with the "traditional rule that when a reason is given, [a reviewing court] should not search beyond it. . . . [T]his is the appropriate scope of review for municipal land use appeals . . . . When an administrative agency specifically states its reasons, the court should go no further because it could reasonably be inferred that this was the extent of its findings. To go beyond those stated reasons invades the factfinding mission of the agency by allowing the court to cull out reasons that the agency may not have found to be credible or proven." (Citations omitted; internal quotation marks omitted.)

[12] One commentator has observed that "[a] fundamental responsibility of the courts vis-a-vis administrative agencies is to prevent them from roaming at will over the adjudicative landscape, without going as far as to substitute the court's judgment for that of the agency. [When] the board does not state why it made a decision, it will be that much more difficult for the court to perform its function. . . . [R]equiring a [zoning agency] to state its reasons for the decision so that a court will not have to search the record for an adequate reason, will prevent a judicial usurpation of the administrative authority." (Footnotes omitted; internal quotation marks omitted.) T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) pp. 482–83. That commentary highlights the inherent tension that arises in such instances wherein a reviewing court must scour the record in search of a valid basis for the zoning agency's action. As it notes, "[it] is nearly boilerplate Connecticut land use law that the court cannot undertake a review de novo of a [zoning agency's] decision, a position somewhat out of place when at the same time the court will re-examine the evidence before [the agency] to search for adequate support for its decision." (Emphasis omitted.) Id., 483.

[13] The regulations similarly provide that "[i]n accordance with [§] 8-6, the [b]oard shall have the power and duty to determine and vary the application of the [r]egulations solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of these [r]egulations would result in exceptional difficulty or unusual hardship." Branford Zoning Regs., § 9.13.A.

[14] General Statutes § 8-6 (b) provides: "Any variance granted by a zoning board of appeals shall run with the land and shall not be personal in nature to the person who applied for and received the variance. A variance shall not be extinguished solely because of the transfer of title to the property or the invalidity of any condition attached to the variance that would affect the transfer of the property from the person who initially applied for and received the variance."

[15] As then Chief Judge Benjamin N. Cardozo of the New York Court of Appeals once observed, "[t]he power of the [b]oard of [a]ppeals is confined to variations in special cases to meet some unusual emergency, some unnecessary hardship. . . . There has been confided to the [b]oard a delicate jurisdiction and one easily abused. Upon a showing of unnecessary hardship, general rules are suspended for the benefit of individual owners, and special privileges established." *People ex rel. Fordham Manor Reformed Church* v. *Walsh*, 244 N.Y. 280, 289–90, 155 N.E. 575 (1927).

[16] General Statutes (Rev. to 2011) § 8-13a (a) provides: "When a building is so situated on a lot that it violates a zoning regulation of a municipality which prescribes the location of such a building in relation to the boundaries of the lot or when a building is situated on a lot that violates a zoning regulation of a municipality which prescribes the minimum area of the lot, and when such building has been so situated for three years without the institution of an action to enforce such regulation, such building shall be deemed a nonconforming building in relation to such boundaries or to the area of such lot, as the case may be."

[17] In their principal appellate brief, the defendants argue that the plaintiff's attorney "made an important concession" during the public hearing when

he indicated his agreement with the proposition that if the existing structure on the property "was leveled in a storm," the applicants "would have the right . . . to build at least the same structure that was there before." That alleged "concession" appears entirely consistent with *Lampasona* and the principles of law articulated therein.

[18] In response to a question from the board as to whether the applicants would be "tearing the house down and starting all over again, Gibson explained that the applicants instead proposed expanding the existing nonconforming structure. He stated in relevant part: "No, we're not going to tear it down. . . . [W]hat we're going to try to do [is] to provide more space by raising the building up to raise the area of the crawl space. . . . And also to have living and storage space on the third level, which is really the second floor, in the rear of the . . . building."

[19] In *Wiltzius* v. *Zoning Board of Appeals*, 106 Conn. App. 1, 28, 940 A.2d 892, cert. denied, 287 Conn. 906, 907, 950 A.2d 1283, 1284 (2008), this court similarly noted that the regulations at issue "expressly prohibit [the] expansion of the nonconformity." In light of that regulatory prohibition and the general principle of zoning law that nonconformities should not be allowed to increase, we held that the applicant's proposal to replace "individual [nonconforming] mobile homes with larger mobile homes in [their] mobile home park constituted an illegal expansion and enlargement of a nonconformity." Id., 24.

[20] The applicants neither requested nor obtained a variance from § 8.1.C.2 of the regulations, despite the fact that they proposed expanding their residential use of the existing structure. In *Munroe* v. *Zoning Board of Appeals*, 75 Conn. App. 796, 806, 818 A.2d 72 (2003), we expressly considered "what is embraced in the term nonconforming use. The term nonconforming uses is often used without consideration as to what aspect of the use of property is nonconforming, and in determining whether an activity is an expansion or change of a nonconforming use, the nature of the nonconformity is important. There are basically four types of nonconformity: (1) nonconforming use—the use of the land or structure on it is nonconforming (e.g., commercial use in a residential zone); (2) a nonconforming lot—the lot is undersized, irregularly shaped, has inadequate width or depth or inadequate frontage; (3) nonconforming building or structure—the structure does not meet the minimum or maximum size requirements, floor area ratio, height or bulk requirements of the existing zoning regulations; (4) nonconformity as to location of structure, i.e., it does not conform with one or more of the setback requirements. These distinctions are important because a particular piece of property may be nonconforming in one of these respects, but conforming as to the others." (Internal quotation marks omitted.)

*Munroe* involved the vertical expansion of a nonconforming structure in the same municipality as the present case. Id., 798. At issue was § 5.7 of the regulations as they existed in 1997, which was titled "Enlargement" and contained language largely identical to that set forth in § 8.1.C of the regulations as they existed in 2011, which also is titled "Enlargement." See *Munroe* v. *Zoning Board of Appeals*, supra, 75 Conn. App. 798 n.4. In that case, this court observed that the proposed expansion implicated "the fourth type of nonconformity, that aspect of use of land or property that relates to the location of the structure or building on the land and whether a second story addition to the building is an increase in that type of nonconforming land use." Id., 806. Unlike the present case, the proposed expansion in *Munroe* would not have "changed the footprint of the building." Id.

[21] Like the applicants in the present case, the applicant in *Michler* owned property containing an existing nonconforming structure. *Michler* v. *Planning & Zoning Board of Appeals*, supra, 123 Conn. App. 184.

[22] The plaintiff in his appellate brief notes that "the regulations have absolutely no bearing on the applicants' ability to renovate and upgrade their property, to relocate the heating system or replace it with an alternative heat source . . . . The regulations prohibit the applicants only from enlarging their house because it would be an expansion of a nonconforming structure."

[23] There exists a crucial distinction between maintaining an existing nonconforming structure and improving, or modernizing, it. As noted in *Munroe* v. *Zoning Board of Appeals*, 75 Conn. App. 796, 810, 818 A.2d 72 (2003), "[z]oning regulations that deal with legal nonconforming uses of land or buildings balance two competing interests, the protection of individual property rights and the protection of the community's interest in a speedy elimination of the particular nonconformity. . . . The landowner has an interest in making reasonable renovations to prevent deterioration, but the community has an interest in not extending the life of the nonconformity so that

the nonconformity gradually will be eliminated. . . . If a property owner is allowed to make drastic changes in a building, that interest would be favored over the interest of the community." (Citations omitted.) See also 4 E. Yokley, Zoning Law and Practice (4th Ed. MacGregor 2003) § 22-11, p. 22-62 ("[g]enerally, while buildings may be repaired or restored, the use may not be enlarged" [footnote omitted]). For that reason, the regulations here provide in relevant part that the intent of the regulations is "to permit these nonconformities to continue until they are removed, but not to encourage their survival"; Branford Zoning Regs., § 8.1.A.2; that "[a]ny structure or use lawfully existing . . . may be continued [but] [a]ny changes to the nonconforming use or structure shall be in compliance with these [r]egulations"; Branford Zoning Regs., § 8.1.B; and that "[n]o nonconforming use of land shall be enlarged, extended or altered, and no structure or part thereof devoted to a nonconforming use shall be enlarged, extended, reconstructed or structurally altered, except where the result of such changes is to reduce or eliminate the nonconformity." Branford Zoning Regs., § 8.1.C.1. Those regulations comport with the "general rule . . . that the owner of a [nonconforming structure] can continue . . . the use of [the] structure that was established prior to the adoption of a restricting regulation, but neither use nor structure may be changed." T. Tondro, supra, p. 157.

As our Supreme Court explained in *Helbig* v. *Zoning Commission*, 185 Conn. 294, 306, 440 A.2d 940 (1981), "the indisputable goal of zoning [is] to reduce nonconforming to conforming uses with all the speed justice will tolerate. . . . Nevertheless, the rule concerning the continuance of a nonconforming use protects the right of a user to continue *the same use of the property as it existed before the date of the adoption of the zoning regulations*." (Citations omitted; emphasis added; internal quotation marks omitted.). "A determination as to whether an alteration, extension, reconstruction, or repair of a nonconforming structure . . . is permissible is dependent on, or is affected by, the particular provisions of the applicable zoning ordinance . . . ." (Internal quotation marks omitted.) *Munroe* v. *Zoning Board of Appeals*, supra, 75 Conn. App. 805–806; see also 101A C.J.S., supra, § 181, p. 264 ("[t]he right to alter or extend a nonconforming structure depends primarily on the terms of the applicable zoning ordinance").

[24] The minutes to the board's March 20, 2012 meeting likewise state that the "changes requested" by the applicants were "slight . . . ."

[25] Unlike the plaintiffs in *Moon* v. *Zoning Board of Appeals*, supra, 291 Conn. 26, the applicants here did not claim in their application or at the public hearing before the board that the literal enforcement of the regulations at issue made "it impossible to add onto the existing [nonconforming] building for . . . necessary compliance with building codes." (Internal quotation marks omitted.)

[26] In his prefatory remarks, Gibson stated in relevant part that "since there is little or no room . . . for horizontal expansion, what has to be done in order to improve the property and modernize it, bring it up to code as much as possible, is to go up." Gibson later argued that the expansion of the existing structure "will contribute to the health and safety of the applicants and owners by helping to provide [them] with fire and building code requirements and providing some modem (sic) of storage which is really needed also for health purposes."

[27] Although Laska made an isolated reference to a "FEMA compliant building" during the board's deliberations, the record contains no evidence of any such requirements. The only other reference in the record to "FEMA" appears in the "Building/Engineering/Zoning/Wetlands Routing Sheet" that the applicants submitted to the town Planning and Zoning Commission on February 23, 2012. In that completed form, the applicants indicated that the property was *not* within a "FEMA Flood Zone." The applicants made no mention of any FEMA requirements in their application or their presentation at the public hearing. In this appeal, the applicants and the board likewise have not mentioned such requirements in either their appellate briefs or at oral argument before this court.

[28] The defendants did not make any mention of compliance with building and fire code requirements either in their appellate briefs or at oral argument before this court.

[29] A deed to the property dated July 3, 1908, references "a right in common with others to a passway for teams and pedestrians over a strip of land 3 ft. wide" that runs "over the [e]ast side of said lot . . . ."

[30] To be clear, the applicants did not specifically raise any confiscation claim before the board. They merely argued that, absent the requested variances, they could not expand the existing nonconforming structure.

[31] That property originally was located in a residential zone. *Chevron Oil*

*Co.* v. *Zoning Board of Appeals*, supra, 170 Conn. 147. At the applicant's request, that zoning classification "was changed to a CB-2 business zone"; id.; prior to his request for a variance. Id., 148.

[32] On appeal, the defendants urge us to ignore the presence of the existing nonconforming structure on the property for purposes of our hardship analysis. We decline to do so. Unlike myriad cases, such as *Chevron Oil Co.* v. *Zoning Board of Appeals*, supra, 170 Conn. 146, and *Archambault* v. *Wadlow*, supra, 25 Conn. App. 375, the present case does not involve an applicant seeking to build a structure on a vacant lot, as Gibson explicitly stated at the outset of the public hearing. Instead, this case involves a proposal to expand an existing nonconforming structure in numerous respects. The suggestion that we must now engage in the fiction that the nonconforming structure does not exist strikes us as both illogical and insincere. The applicants are seeking to continue the "advantages" acquired by the enactment of the regulations; *Kleinsmith* v. *Planning & Zoning Commission*, supra, 157 Conn. 314; which permit and protect significant intrusions into setback and other requirements of the regulations. See footnotes 3 and 4 of this opinion. At the same time, they ask us to ignore the existence of those intrusions in analyzing the hardship issue, despite the fact that their proposal seeks to continue—and expand—those intrusions. In so doing, the defendants "apparently believ[e] that it really is possible to have one's cake and eat it too . . . ." (Internal quotation marks omitted.) *Piquet* v. *Chester*, 306 Conn. 173, 191 n.17, 49 A.3d 977 (2012).

[33] McGrath stated during the public hearing: "It's not as though this applicant can't build [and] is being denied [the] use of his property [and] is denied all reasonable benefit of this property. There's a house here. It's a residential district. There is a residence. It's [been] used as a summer residence, it has been for a very long period of time. There's nothing about this . . . lot, this structure and the application of the [regulations] to it that denies them the reasonable benefit of their property."

[34] Another alternative is to revise their proposal so as request variances that lessen the nonconformity on the property, consistent with *Adolphson* v. *Zoning Board of Appeals*, supra, 205 Conn. 703, and its progeny. See part V of this opinion.

[35] The applicants presented no evidence at the public hearing that a denial of the requested variances would preclude any reasonable use of the property. In their principal appellate brief, the defendants argue that we should ignore the existing nonconforming residential use of the property for purposes of our hardship analysis, which claim we already have rejected. See footnote 32 of this opinion.

[36] McGrath stated: "It's not as though this applicant can't build [and] is being denied [the] use of his property [and] is denied all reasonable benefit of this property. There's a house here. It's a residential district. There is a residence. It's [been] used as a summer residence, it has been for a very long period of time. There's nothing about this . . . lot, this structure and the application of the [regulations] to it that denies them the reasonable benefit of their property. They have a house there. It's their notion that they want to build, they want to expand, they want to completely gut the place as the architect indicated, they want to put a master bedroom on and another bathroom . . . they want to do all these things. It's the construction that creates the extensible hardship. . . . It's their desire to expand. It's their desire to extend. Their desire to have a better . . . living space than they have now that . . . causes them to bring this application, and it makes them try to find this as a hardship." If the requested variances were denied, McGrath argued, "the applicant still has a perfectly useful residence."

[37] In an unrelated context, the terminology also pertains to one's duty to neighboring properties. See, e.g., *Nailor* v. *C. W. Blakeslee & Sons, Inc.*, 117 Conn. 241, 245, 167 A. 548 (1933) ("[i]t is the duty of every person to make a reasonable use of his own property so as to occasion no unnecessary damage or annoyance to his neighbor").

[38] The defendants rely principally on this court's decision in *Stillman* v. *Zoning Board of Appeals*, 25 Conn. App. 631, 632, 596 A.2d 1, cert. denied, 220 Conn. 923, 598 A.2d 365 (1991). That decision is distinguishable from the present case, as the applicant in *Stillman* sought to construct a first floor addition to her house due to "her advancing age"; id., 633; and the hardship that supported the granting of a variance arose "from the configuration of [the applicant's] lot and the location of the well and the septic system"; id., 637; which left the side setback area as the only area in which an addition was possible. Id., 636. The present case, by contrast, is not one in which the buildable area on the property is constrained by the presence of what *Stillman* referred to as "improvements" such as a well or septic

system. Id. Moreover, unlike *Stillman*, the applicants' proposal involves adding a third story to the existing nonconforming structure; see footnote 8 of this opinion; which causes "a substantial increase in the nonconformity." *Munroe* v. *Zoning Board of Appeals*, supra, 75 Conn. App. 811.

Having concluded that *Stillman* is factually distinguishable from this case, we also disagree with the defendants' assertion that *Stillman* modified the hardship standard when it allegedly "rejected" a "strict interpretation of the hardship test" for instances in which an applicant already possessed "a reasonable use of their land." It is axiomatic that this court "is not free to depart from or modify the precedent of our Supreme Court." *Three Levels Corp.* v. *Conservation Commission*, 148 Conn. App. 91, 113, 89 A.3d 3 (2014). As we just discussed, our Supreme Court consistently has held that the personal preferences of property owners in terms of the use of their property is not a proper basis for a finding of hardship, nor is disappointment in the use of their property. With respect to the expansion of existing nonconformities, that court has held that "nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit—[i]n no case should they be allowed to increase." (Internal quotation marks omitted.) *Adolphson* v. *Zoning Board of Appeals*, supra, 205 Conn. 710; see also *Bauer* v. *Waste Management of Connecticut, Inc.*, supra, 234 Conn. 243 ("a nonconforming structure cannot be increased in size in violation of zoning ordinances, i.e., nonconforming additions may not be made to the nonconforming structure").

We further are mindful that *Bloom* v. *Zoning Board of Appeals*, supra, 233 Conn. 199, also involved applicants who "expanded and altered" a nonconforming structure "within the nonconforming areas"; id.; and then relied on *Stillman* in support of their claim of hardship. Id., 210 n.13. After distinguishing that precedent, our Supreme Court declared: "Furthermore, the fact that an owner is prohibited from adding new structures to the property does not constitute a legally cognizable hardship." Id., 210–11 n.13. The court then opined that "[i]f it is a hardship to not be able to use one's property as one wishes, then most setback variance applications would have to be granted." (Internal quotation marks omitted.) Id., 211 n.13. The Supreme Court concluded its discussion of *Stillman* with the following admonition: "Although we distinguish *Stillman* from this case, we do not necessarily endorse its holding." Id. In the nearly quarter-century since *Stillman* was decided, the Supreme Court not once has relied on that precedent in any manner, and the Supreme Court has since stated that the inability to add "new structures to the property does not constitute a legally cognizable hardship"; id., 210–11 n.13; that personal "inconvenience . . . does not rise to the level of hardship necessary for the approval of a variance"; *Moon* v. *Zoning Board of Appeals*, supra, 291 Conn. 26 n.9; and that an applicant cannot demonstrate unusual hardship when it "failed to prove that it could not continue to use the property as it had been used for many years . . . ." *Rural Water Co.* v. *Zoning Board of Appeals*, supra, 287 Conn. 297. In light of the great weight of authority of our Supreme Court, and *Bloom*'s treatment of *Stillman* in particular, we thus view *Stillman* as best confined to its essential facts.

[39] The defendants' position appears to be animated by a faulty premise— namely, that the applicants possess a right to expand their nonconforming structure. That presumption finds no support in our law. As the Supreme Court observed in *Bloom* v. *Zoning Board of Appeals*, supra, 233 Conn. 210–11 n.13, "the fact that an owner is prohibited from adding new structures to the property does not constitute a legally cognizable hardship." See also *Bauer* v. *Waste Management of Connecticut, Inc.*, supra, 234 Conn. 243 ("a nonconforming structure cannot be increased in size in violation of zoning ordinances, i.e., nonconforming additions may not be made to the nonconforming structure"). Property owners that enjoy the advantages of a nonconforming lot or structure, therefore, must recognize that the existence of such nonconformities does not confer the "right to build an addition." T. Tondro, supra, 77 (Cum. Supp. 2000); see also 2 P. Salkin, American Law of Zoning (5th Ed. 2011) § 12:19, p. 12-121. ("[t]he right to continue a nonconforming use does not include a right to expand or enlarge it"); 101A C.J.S., supra, § 188, p. 269 ("the area of a nonconforming use may not be enlarged or extended, except as permitted by applicable zoning statutes or ordinances" [footnote omitted]).

[40] In so doing, the court in *Vine* distinguished *Giarrantano* v. *Zoning Board of Appeals*, 60 Conn. App. 446, 760 A.2d 132 (2000), another case cited by the defendants in this appeal. As the court noted, the regulations at issue specifically included the phrase " 'reasonable use of such land' " in specifying the powers and duties of the defendant board. Id., 448 n.1. In *Vine*—a subsequent decision by the same authoring judge—this court explicitly noted that distinction in rejecting the claim that "a variance may be granted on the basis of the denial of reasonable use of the property." *Vine*

v. *Zoning Board of Appeals*, supra, 93 Conn. App. 9 n.14.

[41] See footnote 18 of this opinion.

[42] In their principal appellate brief, the defendants submit that "to obtain a variance, one need not prove that the circumstances are highly unusual; one must prove only that one's circumstances are not applicable or relevant to *the whole* of the pertinent zoning district . . . ." (Emphasis added; internal quotation marks omitted.) They then argue that "[n]othing in the administrative record suggests that the conditions affecting the applicants' property 'generally affected' *all* of the other properties in the R-2 district." (Emphasis added.) That novel take on the hardship standard cannot be reconciled with the ample body of precedent from this state's highest court indicating otherwise.

[43] "[A] zoning map is an integral part of the zoning regulations, without which the regulations are said to be meaningless . . . ." (Citation omitted; internal quotation marks omitted.) *Planning & Zoning Commission* v. *Gilbert*, 208 Conn. 696, 706–707, 546 A.2d 823 (1988). Following the commencement of this appeal, the defendants filed a motion for permission to correct the record by filing "a corrected set of zoning regulations and zoning map," consistent with the dictates of Practice Book § 81-6 ("[t]he appellant's brief shall be filed simultaneously with one complete copy of the local land use regulations that were in effect at the time of the hearing that gave rise to the agency action or ruling in dispute."). We granted that motion, thereby accepting those materials into the record before us.

[44] "An interesting feature of the . . . test for a variance is the situation of the undersized residential lot in a subdivision or neighborhood with similar undersized lots. The existence of similar lots . . . make[s] it difficult or impossible to prove unusual or unique hardship." 9 R. Fuller, supra, § 9.2, p. 240.

[45] Arguably implicit in that request is some acknowledgement that the applicants' claimed hardship is not unique to their property.

[46] As the board's chairman noted, "What I'm hearing [from the applicants] is, we have a structure that is old, it's falling apart . . . it's in need of major renovations . . . regardless of whether it gets expanded or not. But since we're going to go through all that, we might as well, rather [than] to maintain the status quo, we're going to ask for permission to improve it and enlarge it somewhat. That's what I'm hearing."

[47] The dissenting justices expressed their disagreement with the proposition "that a change in a nonconforming use otherwise violative of the comprehensive plan may be permitted by way of a variance, so long as the new use is less offensive than the former use . . . ." *Adolphson* v. *Zoning Board of Appeals*, supra, 205 Conn. 717 (*Shea, J.*, dissenting).

[48] As in *Adolphson*, the court in *Stancuna* went to great lengths to emphasize that the variance did not result in an increase of the existing nonconformity. We stated: "In this case, the court did not conclude that the variance was an expansion of a nonconformity. Rather, it concluded that the board had properly granted the variance. The board did not allow for a continuance and expansion of the nonconforming use, rather, it granted [the] application for a variance under the applicable regulations. The defendant is not increasing the size of the existing structure or building a larger one at the same location. Therefore, no expansion of the nonconforming use can occur." *Stancuna* v. *Zoning Board of Appeals*, supra, 66 Conn. App. 573.

[49] In their reply brief, the defendants state that § 8.1 "flatly prohibits any enlargement of a nonconforming structure." They are mistaken. Although that regulation flatly prohibits the enlargement of any *nonconformity* on an existing nonconforming structure, the regulation permits the expansion of such structures to the extent that (1) it does not increase the nonconformity; Branford Zoning Regs., § 8.1.A.3; and (2) "such enlarged portion conforms to the regulations applying to the district in which it is located." Branford Zoning Regs., § 8.1.C.3. The *Adolphson* exception, which we discussed in part V of this opinion, meets that criteria pursuant to § 8.1.C.1 of the regulations.